# ATCHISON, TOPEKA AND SANTA FÉ RAILROAD COMPANY *v.* MATTHEWS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 147. Submitted January 18, 1899. — Decided April 17, 1899.

The provision in § 2 of c. 155 of the acts of Kansas of 1885, entitled "An act relating to the liability of railroads for damages by fire," that, "in all actions commenced under this act, if the plaintiff shall recover, there shall be allowed him by the court a reasonable attorney's fee, which shall become a part of the judgment," must, for reasons stated in the opinion of the court, be sustained as legislation authorized by the Constitution of the United States.

THE statement of the case will be found in the opinion of the court.

*Mr. Robert Dunlap* and *Mr. E. D. Kenna*, for plaintiff in error, submitted on their brief.

No appearance for defendants in error.

MR. JUSTICE BREWER delivered the opinion of the court.

In 1885 the legislature of Kansas passed the following act:

"An act relating to the liability of railroads for damages by fire.

"SECTION 1. *Be it enacted by the legislature of the State of Kansas:* That in all actions against any railway company organized or doing business in this State, for damages by fire, caused by the operating of said railroad, it shall be only necessary for the plaintiff in said action to establish the fact that said fire complained of was caused by the operating of said railroad, and the amount of his damages, (which proof shall be *prima facie* evidence of negligence on the part of said railroad): *Provided,* That in estimating the damages under this act, the contributory negligence of the plaintiff shall be taken into consideration.

"SEC. 2. In all actions commenced under this act, if the plaintiff shall recover, there shall be allowed him by the court a reasonable attorney's fee, which shall become a part of the judgment." (Sess. Laws 1885, c. 155, 258.)

Under it an action was brought in the district court of Cloud County which resulted in a judgment against the railroad company, plaintiff in error, for $2094 damages and $225 attorney's fees. This judgment having been affirmed by the Supreme Court of the State, the company brought the case here on error.

All questions of fact are settled by the decision of the state courts, *Hedrick* v. *Atchison, Topeka &c. Railroad,* 167 U. S. 673, 677, and cases cited in the opinion, and the single matter for our consideration is the constitutionality of this statute. It is contended that it is in conflict with the Fourteenth Amendment to the Federal Constitution, and this contention was distinctly ruled upon by the Supreme Court of the State adversely to the railroad company. In support of this contention great reliance is placed upon *Gulf, Colorado & Santa Fé Railway* v. *Ellis,* 165 U. S. 150. In that case a statute of Texas allowing an attorney's fee to the plaintiffs in actions against railroad corporations on claims, not exceeding in

amount $50, for personal services rendered or labor done, or for damages, or for overcharges on freight, or for stock killed or injured, was adjudged unconstitutional. It was held to be simply a statute imposing a penalty on railroad corporations for failing to pay certain debts, and not one to enforce compliance with any police regulations. It was so regarded by the Supreme Court of the State, and its construction was accepted in this court as correct. While the right to classify was conceded, it was said that such classification must be based upon some difference bearing a reasonable and just relation to the act in respect to which the classification is attempted; that no mere arbitrary selection can ever be justified by calling it classification. And there is no good reason why railroad corporations alone should be punished for not paying their debts. Compelling the payment of debts is not a police regulation. We see no reason to change the views then expressed, and if the statute before us were the counterpart of that, we should be content to refer to that case as conclusive.

But while there is a similarity, yet there are important differences; and differences which in our judgment compel an opposite conclusion. The purpose of this statute is not to compel the payment of debts, but to secure the utmost care on the part of railroad companies to prevent the escape of fire from their moving trains. This is obvious from the fact that liability for damages by fire is not cast upon such corporations in all cases, but only in those in which the fire is "caused by the operating" of the road. It is true that no special act of precaution was required of the railroad companies, failure to do which was to be visited with this penalty, so that it is not precisely like the statutes imposing double damages for stock killed where there has been a failure to fence. *Missouri Pac. Railway* v. *Humes*, 115 U. S. 512. And yet its purpose is not different. Its monition to the railroads is not, pay your debts without suit or you will, in addition, have to pay attorney's fees; but rather, see to it that no fire escapes from your locomotives, for if it does you will be liable, not merely for the damage it causes, but also for the reasonable attorney's fees of the owner of the property injured or destroyed. It

has been frequently before the Supreme Court of Kansas, has always been so interpreted by that court, and its validity sustained on that ground. In *Missouri Pac. Railway* v. *Merrill*, 40 Kansas, 404, 408, it was said :

"The objection that this legislation is special and unequal cannot be sustained. The dangerous element employed and the hazards to persons and property arising from the running of trains and the operation of railroads, justifies such a law ; and the fact that all persons and corporations brought under its influence are subjected to the same duties and liabilities, under similar circumstances, disposes of the objections raised."

And in the opinion filed in the present case, 58 Kansas, 447, 450, that court observed :

"Our statute is somewhat in the nature of a police regulation, designed to enforce care on the part of railroad companies to prevent the communication of fire and the destruction of property along railroad lines. It is not intended merely to impose a burden on railroad corporations that private persons are not required to bear, and the remedy offered is one the legislature has the right to give in such cases. This is the view heretofore held by this court, which we see no reason for changing. *St. Louis & San Francisco Railway* v. *Snaveley*, 47 Kansas, 637; *Same* v. *Curtis*, 48 Kansas, 179; *Same* v. *McMullen*, Id. 281; *Missouri Pac. R. R. Co.* v. *Henning*, Id. 465."

It is true that the *Ellis case* was one to recover damages for the killing of a colt by a passing train. And so it might be argued that the protection of the track from straying stock and the protection of stock from moving trains would, within the foregoing principles, uphold legislation imposing an attorney's fee in actions against railroad corporations. We were not insensible to this argument when that case was considered, but we accepted the interpretation of the statute and its purpose given by the Supreme Court of Texas, as appears from this extract from our opinion (p. 153): "The Supreme Court of the State considered this statute as a whole and held it valid, and as such it is presented to us for consideration. Considered as such, it is simply a statute imposing a penalty

upon railroad corporations for a failure to pay certain debts."
And again, referring specifically to this matter, (p. 158):
"While this action is for stock killed, the recovery of attor-
ney's fees cannot be sustained upon the theory just suggested.
There is no fence law in Texas.  The legislature of the State
has not deemed it necessary for the protection of life or prop-
erty to require railroads to fence their tracks, and as no duty
is imposed, there can be ro penalty for non-performance.
Indeed, the statute does not proceed upon any such theory;
it. is broader in its scope.  Its object is to compel the payment
of the several classes of debts named, and was so regarded by
the Supreme Court of the State."   Indeed, the limit in amount,
($50,) found in that statute, made it clear that no police regu-
lation was intended, for if it were, the more stock found on
the track the greater would be the danger and the more
imperative the need of regulation and penalty.

So that according to the interpretation placed upon the
Texas statute by its Supreme Court, its purpose was generally
to compel the payment of small debts, and the fact that among
the debts so provided for was the liability for stock killed was
not sufficient to justify us in separating the statute into frag-
ments and upholding one part on a theory inconsistent with
the policy of the State; while on the other hand, the purpose
of this statute is, as declared by the Supreme Court of Kansas,
protection against fire — a matter in the nature of a police
regulation.

It may be suggested that this line of argument leads to the
conclusion. that a statute of one State whose purpose is de-
clared by its Supreme Court to be a matter of police regula-
tion will be upheld by this court as not in conflict with the
Federal Constitution, while a statute of another State, pre-
cisely similar in its terms, will be adjudged in conflict with
that Constitution if the Supreme Court of that State interprets
its purpose and scope as entirely outside police regulation.
But this by no means follows.  This court is not concluded by
the opinion of the Supreme Court of the State.  *Yick Wo* v.
*Hopkins,* 118 U. S. 356, 366.  It forms its own independent
judgment as to the scope and purpose of a statute, while of

course leaning to any interpretation which has been placed upon it by the highest court of the State.    We have referred to the interpretation placed upon the respective statutes of Texas and Kansas by their highest courts, not as conclusive, but as an interpretation towards which we ought to lean, and which, in fact, commends itself to our judgment.

That there is peculiar danger of fire from the running of railroad trains is obvious.    The locomotives, passing, as they do at great rates of speed, and often when the wind .is blowing a gale, will, unless the utmost care is taken, (and sometimes in spite of such care,) scatter fire along the track.    The danger to adjacent property is one which is especially felt in a prairie State like Kansas.    It early attracted the attention of its legislature, and in 1860 — long before any railroads were built in the State — this statute was passed, (Laws 1860, c. 70, sec. 2; Comp. Laws, c. 101, sec. 2): "If any person shall set on fire any woods, marshes or prairies, so as thereby to occasion any damage to any other person, such person shall make satisfaction for such damage to the party injured, to be recovered in an action."    As held in *Emerson* v. *Gardiner*, 8 Kansas, 452, its effect was to change the rule of the common law, which gave redress only when the person setting the fire did so wantonly or through negligence, whereas by this statute the mere fact of setting fire to woods, marshes or prairies gave a right to the party injured to recover damages.    And in the years after the railroads began to be constructed, and prior to the passage of the act before us, the reports of the Supreme Court of that State show that nearly a score of actions had been brought to that court for consideration, in some of which great damage had been done by fire escaping from moving trains.    Fire catching in the dry grass often runs for miles, destroying not merely crops but houses and barns.    Indeed, in one case, *Atchison, Topeka &c. Railroad* v. *Stanford*, 12 Kansas, 354, it appeared that the fire escaping had swept across the prairies for over four miles, and one ground of objection to the recovery was that the distance of the property destroyed from the railroad track was so great and the fire had passed over so many intervening farms that it could

not rightfully be held that the proximate cause of the injury was the escape of fire from the locomotive. No other work done, or industry carried on, carries with it so much of danger from escaping fire.

In 1887 the legislature of the State of Missouri felt constrained to pass an act making every railroad corporation responsible in damages for all property destroyed by fire communicated directly or indirectly from its engines, and giving the corporation an insurable interest in the property along its road. This statute was, after a full examination of all the authorities, held by this court a valid exercise of the legislative power. *St. Louis & San Francisco Railway* v. *Mathews*, 165 U. S. 1. So, when the legislature of Kansas made a classification, and included in one class all corporations engaged in this business of peculiar hazard, it did so upon a difference having a reasonable relation to the object sought to be accomplished, to wit, the securing of protection of property from damage or destruction by fire.

While, as heretofore noticed, no special act of precaution was required, no statutory duty imposed upon railroad corporations in respect to protection against escaping fire, and a similar omission in the legislation of Texas was referred to in the opinion in the *Ellis case* as strengthening the argument that no police regulation was intended, yet we are of opinion that such omission is not conclusive upon the question of the validity of the statute. We have no right to consider the wisdom of such legislation. Our inquiry runs only to the matter of legislative power. If, in order to accomplish a given beneficial result — a result which depends on the action of a corporation — the legislature has the power to prescribe a specific duty and punish a failure to comply therewith by a penalty, either double damages or attorney's fees, has it not equal power to prescribe the same penalty for failing to accomplish the same result, leaving to the corporation the selection of the means it deems best therefor? Does the power of the legislature depend on the method it pursues to accomplish the result? As individuals we may think it better that the legislature prescribe the specific duties which the corporations must

perform; we may think it better that the legislation should be like that of Missouri, prescribing an absolute liability, instead of that of Kansas, making the fact of fire *prima facie* evidence of negligence; but clearly as a court we may not interpose our personal views as to the wisdom or policy of either form of legislation. It cannot be too often said that forms are matters of legislative consideration; results and power only are to be considered by the courts.

Many cases have been before this court, involving the power of state legislatures to impose special duties or liabilities upon individuals and corporations, or classes of them, and while the principles of separation between those cases which have been adjudged to be within the power of the legislature and those beyond its power, are not difficult of comprehension or statement, yet their application often becomes very troublesome, especially when a case is near to the dividing line. It is easy to distinguish between the full light of day and the darkness of midnight, but often very difficult to determine whether a given moment in the twilight hour is before or after that in which the light predominates over the darkness. The equal protection of the law which is guaranteed by the Fourteenth Amendment does not forbid classification. That has been asserted in the strongest language. *Barbier* v. *Connolly*, 113 U. S. 27. In that case, after in general terms declaring that the Fourteenth Amendment designed to secure the equal protection of the laws, the court added (pp. 31 and 32):

"But neither the amendment — broad and comprehensive as it is — nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity. From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains. Special burdens are often necessary for general benefits — for supplying water, preventing fires, lighting districts, cleaning

streets, opening parks, and many other objects. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

This declaration has, in various language, been often repeated, and the power of classification upheld whenever such classification proceeds upon any difference which has a reasonable relation to the object sought to be accomplished. It is also clear that the legislature (which has power in advance to determine what rights, privileges and duties it will give to and impose upon a corporation which it is creating) has, under the generally reserved right to alter, amend or repeal the charter, power to impose new duties and new liabilities upon such artificial entities of its creation. *St. Louis &c. Railway Company* v. *Paul*, 173 U. S. 404. It is also a maxim of constitutional law that a legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts, and with the purpose of promoting the interests of the people as a whole, and courts will not lightly hold that an act duly passed by the legislature was one in the enactment of which it has transcended its power. On the other hand, it is also true that the equal protection guaranteed by the Constitution forbids the legislature to select a person, natural or artificial, and impose upon him or it burdens and liabilities which are not cast upon others similarly situated. It cannot pick out one individual, or one corporation, and enact that whenever he or it is sued the judgment shall be for double damages, or subject to an attorney fee in favor of the plaintiff, when no other individual or corporation is subjected to the same rule.

Neither can it make a classification of individuals or corporations which is purely arbitrary, and impose upon such class special burdens and liabilities. Even where the selection is not obviously unreasonable and arbitrary, if the discrimination is based upon matters which have no relation to the object sought to be accomplished, the same conclusion of unconstitutionality is affirmed. *Yick Wo* v. *Hopkins, supra,* forcibly illustrates this. In that case a municipal ordinance of San Francisco, designed to prevent the Chinese from carrying on the laundry business was adjudged void. This court looked beyond the mere letter of the ordinance to the condition of things as they existed in San Francisco, and saw that under the guise of regulation an arbitrary classification was intended and accomplished.

While cases on either side and far away from the dividing line are easy of disposition, the difficulty arises as the statute in question comes near the line of separation. Is the classification or discrimination prescribed thereby purely arbitrary or has it some basis in that which has a reasonable relation to the object sought to be accomplished? It is not at all to be wondered at that as these doubtful cases come before this court the justices have often divided in opinion. To some the statute presented seemed a mere arbitrary selection; to others it appeared that there was some reasonable basis of classification. Without attempting to cite all the cases it may not be amiss to notice, in addition to those already cited, the following: *Missouri* v. *Lewis,* 101 U. S. 22; *Hayes* v. *Missouri,* 120 U. S. 68; *Duncan* v. *Missouri,* 152 U. S. 377, 382; *Marchant* v. *Pennsylvania Railroad,* 153 U. S. 380, 389; *Chicago, Kansas & Western Railroad* v. *Pontius,* 157 U. S. 209; *Lowe* v. *Kansas,* 163 U. S. 81, 88; *Plessy* v. *Ferguson,* 163 U. S. 537; *Covington & Lexington Turnpike Co.* v. *Sandford,* 164 U. S. 578, 597; *Jones* v. *Brim,* 165 U. S. 180; *W. U. Tel. Co.* v. *Indiana,* 165 U. S. 304; *Chicago, Burlington &c. Railroad* v. *Chicago,* 166 U. S. 226, 257; *Holden* v. *Hardy,* 169 U. S. 366; *Savings Society* v. *Multnomah County,* 169 U. S. 421; *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S. 283, 300; *Tinsley* v. *Anderson,* 171 U. S. 101. In some of them the

court was unanimous. In others it was divided; but the division in all of them was, not upon the principle or rule of separation, but upon the location of the particular case one side or the other of the dividing line.

It is the essence of a classification that upon the class are cast duties and burdens different from those resting upon the general public. Thus, when the legislature imposes on railroad corporations a double liability for stock killed by passing trains it says, in effect, that if suit be brought against a railroad company for stock killed by one of its trains it must enter into the courts under conditions different from those resting on ordinary suitors. If it is beaten in the suit it must pay not only the damage which it has done, but twice that amount. If it succeeds, it recovers nothing. On the other hand, if it should sue an individual for destruction of its live stock it could under no circumstances recover any more than the value of that stock. So that it may be said that in matter of liability, in case of litigation, it is not placed on an equality with other corporations and individuals; yet this court has unanimously said that this differentiation of liability, this inequality of right in the courts, is of no significance upon the question of constitutionality. Indeed, the very idea of classification is that of inequality, so that it goes without saying that the fact of inequality in no manner determines the matter of constitutionality.

Our conclusion in respect to this statute is that, for the reasons above stated, giving full force to its purpose as declared by the Supreme Court of Kansas, to the presumption which attaches to the action of a legislature that it has full knowledge of the conditions within the State, and intends no arbitrary selection or punishment, but simply seeks to subserve the general interest of the public, it must be sustained, and the judgment of the Supreme Court of Kansas is

*Affirmed.*

MR. JUSTICE HARLAN, with whom concurred MR. JUSTICE BROWN, MR. JUSTICE PECKHAM and MR. JUSTICE McKENNA, dissenting.

The statute of Kansas, the validity of which is involved in the present case, provides in its first section that in all actions against a railway company to recover damages resulting from fire caused by the operating of its road, it shall only be necessary for the plaintiff to establish the fact that the fire complained of " was caused by the operating of said railroad, and the amount of his damages (which proof shall be *prima facie* evidence of negligence on the part of said railroad): *Provided*, that in estimating the damages under this act, the contributory negligence of the plaintiff shall be taken into consideration." The second and only other section provides that " if the plaintiff shall recover, there shall be allowed him by the court a reasonable attorney's fee, which shall become a part of the judgment."

Manifestly, the statute applies only to suits against railroad companies, and only to causes of action arising from fire caused by operating a railroad. It establishes against a defendant railroad company a rule of evidence as to negligence that does not apply in any other suit for damages arising from the negligence of a defendant, whether a corporate or natural person. It does more. It imposes upon the defendant railroad corporation, if unsuccessful in its defence, a burden not imposed upon any other unsuccessful defendant sued upon a like or upon a different cause of action. That burden is the payment of an attorney's fee as a part of the judgment. Even if it appears that the railway company was not guilty of any negligence whatever or that the plaintiffs were guilty of contributory negligence preventing any recovery in their favor, no such fee nor any sum beyond ordinary costs is taxed against them.

In *Gulf, Colorado & Santa Fé Railway* v. *Ellis*, 165 U. S. 150, we had before us a statute of Texas declaring among other things that any person in that State having " claims for stock killed or injured by the train of any railway company, provided that such claim for stock killed or injured shall be presented to the agent of the company nearest to the point where such stock was killed or injured, against any railroad corporation operating a railroad in this State, and the amount of such claim does not exceed $50, may present the same, veri-

fied by his affidavit, for payment to such corporation by filing it with any station agent of such corporation in any county where suit may be instituted for the same, and if, at the expiration of thirty days after such presentation, such claim has not been paid or satisfied, he may immediately institute suit thereon in the proper court; and if he shall finally establish his claim, and obtain judgment for the full amount thereof, as presented for payment to such corporation in such court, or any court to which the suit may have been appealed, he shall be entitled to recover the amount of such claim and all costs of suit, and *in addition thereto all reasonable attorney's fees,* provided he has an attorney employed in his case, not to exceed $10, to be assessed and awarded by the court or jury trying the issue."

That was an action against the railway company to recover damages for the killing of an animal. Judgment was entered against the company, and it included a special attorney's fee. That judgment was sustained by the state court.

The question to be decided was whether within the meaning of the Fourteenth Amendment and in the cases specified the Texas statute did not deny to a railroad corporation the equal protection of the laws in that it required the corporation, if unsuccessful in the suit, to pay, in addition to the ordinary costs taxable in favor of a successful litigant, a special attorney's fee, but gave it no right if successful to demand a like fee from its adversary.

After observing that only against railway companies and only in certain cases was such exaction made, and considering the statute as a whole, this court said: "It is simply a statute imposing a penalty upon railroad corporations for a failure to pay certain debts. No individuals are thus punished, and no other corporations. The act singles out a certain class or debtors and punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. They cannot appeal to the courts as other litigants under like conditions and with like protection. If litigation terminates adversely to them, they are mulcted in the attorney's fees of the successful plaintiff;

if it terminates in their favor, they recover no attorney's fees. It is no sufficient answer to say that they are punished only when adjudged to be in the wrong. They do not enter the courts upon equal terms. They must pay attorney's fees if wrong; they do not recover any if right; while their adversaries recover if right and pay nothing if wrong. In the suits therefore to which they are parties they are discriminated against, and are not treated as others. They do not stand equal before the law. They do not receive its equal protection. All this is obvious from a mere inspection of the statute."

Referring to the previous decisions of this court holding that corporations were persons within the meaning of the Fourteenth Amendment of the Constitution of the United States, this court also said: "The rights and securities guaranteed to persons by that instrument cannot be disregarded in respect to these artificial entities called corporations any more than they can be in respect to the individuals who are the equitable owners of the property belonging to such corporations. A State has no more power to deny to corporations the equal protection of the law than it has to individual citizens."

In response to the argument made in that case that it was competent for the legislature to make a classification of corporations enjoying special privileges, the court said: "That such corporations may be classified for some purposes is unquestioned. The business in which they are engaged is of a peculiarly dangerous nature, and the legislature, in the exercise of its police powers, may justly require many things to be done by them in order to secure life and property. Fencing of railroad tracks, use of safety couplers, and a multitude of other things easily suggest themselves. And any classification for the imposition of such special duties — duties arising out of the particular business in which they are engaged — is a just classification and not one within the prohibition of the Fourteenth Amendment. Thus it is frequently required that they fence their tracks, and as a penalty for a failure to fence double damages in case of loss are inflicted. *Missouri Pacific Railway v. Humes*, 115 U. S. 512. But this and all

kindred cases proceed upon the theory of a special duty resting upon railroad corporations by reason of the business in which they are engaged — a duty not resting upon others; a duty which can be enforced by the legislature in any proper manner; and whether it enforces it by penalties in the way of fines coming to the State, or by double damages to a party injured, is immaterial. It is all done in the exercise of the police power of the State and with a view to enforce just and reasonable police regulations. While this action is for stock killed, the recovery of attorney's fees cannot be sustained upon the theory just suggested. There is no fence law in Texas. The legislature of the State has not deemed it necessary for the protection of life or property to require railroads to fence their tracks, and as no duty is imposed, there can be no penalty for non-performance. Indeed, the statute does not proceed upon any such theory; it is broader in its scope. Its object is to compel the payment of the several classes of debts named, and was so regarded by the Supreme Court of the State." Again: "Neither can it be sustained as a proper means of enforcing the payment of small debts and preventing any unnecessary litigation in respect to them, because it does not impose the penalty in all cases where the amount in controversy is within the limit named in the statute. Indeed, the statute arbitrarily singles out one class of debtors and punishes it for a failure to perform certain duties — duties which are equally obligatory upon all debtors; a punishment not visited by reason of the failure to comply with any proper police regulations, or for the protection of the laboring classes or to prevent litigation about trifling matters, or in consequence of any special corporate privileges bestowed by the State. Unless the legislature may arbitrarily select one corporation or one class of corporations, one individual or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency, this statute cannot be sustained. But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the Fourteenth Amendment forbids this."

If the opinions in the *Ellis case* and in this case be taken together, the state of the law seems to be this :

1. A State *may not* require a railroad company sued for negligently killing an animal to pay to the plaintiff, in addition to the damages proved and the ordinary costs, a reasonable attorney's fee, if it does not allow the corporation when its defence is sustained to recover a like attorney's fee from the plaintiff.

2. A State *may* require a railroad company sued for and adjudged liable to damages arising from fire caused by the operation of its road, to pay to the plaintiff, in addition to the damages proved and the ordinary costs, a reasonable attorney's fee, even if it does not allow the corporation when successful in its defence to recover a like attorney's fee from the plaintiff.

The first proposition arises out of a suit brought on account of the killing by the railroad of a colt.  The second proposition arises out of a suit brought on account of the destruction of an elevator and the property attached to it by fire caused by operating a railroad.

Having assented in the *Ellis case* to the first proposition, I cannot give my assent to the suggestion that the second proposition is consistent with the principles there laid down. Placing the present case beside the former case, I am not astute enough to perceive that the Kansas statute is consistent with the Fourteenth Amendment, if the Texas statute be unconstitutional.

In the former case we held that a railroad corporation, sued for killing an animal, was entitled to enter the courts upon equal terms with the plaintiff, but that that privilege was denied to it when the Texas statute required it to pay a special attorney's fee if wrong, and did not allow it to recover any fee if right in its defence ; and yet allowed the plaintiff to recover a special attorney's fee if right, and pay none if wrong.  Upon these grounds it was adjudged that the parties did not stand equal before the law, and did not receive its equal protection.  In the present case the Kansas statute is held to be constitutional, although the parties in

suits embraced by its provisions are not permitted to enter the courts upon equal terms, and although the defendant railroad corporation is not allowed to recover an attorney's fee if right, but must pay one if found to be wrong in its defence ; while the plaintiff is exempt from that burden if found to be wrong.

In the former case it was adjudged that a State had no more power to deny to corporations the equal protection of the law than it has to individual citizens. In the present case it is adjudged that in suits against a railroad corporation to recover damages arising from fire caused by the operation of the railroad, a rule of evidence may be applied against the corporation which is not applied in like actions against other corporations or against individuals for the negligent destruction of property by fire.

In the former case it was held that as the killing of the colt was not attributable to a failure upon the part of the railroad to perform any duty imposed upon it by statute, there could be no penalty for non-performance. In the present case it is adjudged that the statute may impose a penalty upon the defendant corporation for non-performance, although the negligence imputed to it was not in violation of any statutory duty.

Suppose the statute in question had been so framed as to give the railroad corporation a special attorney's fee if successful in its defence, but did not allow such a fee to an individual plaintiff when successful. I cannot believe that any court, Federal or state, would hesitate a moment in declaring such an enactment void as denying to the plaintiff the equal protection of the laws. If this be true, it would seem to follow that a statute that accords to the plaintiff rights in courts that are denied to his adversary should not be sustained as consistent with the doctrine of the equal protection of the laws. This conclusion, it seems to me, is inevitable unless the court proceeds upon the theory that a corporate person in a court of justice may be denied the equal protection of the laws when such protection could not be denied under like circumstances to natural persons. But we said in the *Ellis*

*case* that " a State has no more power to deny to corporations the equal protection of the laws than it has to individual citizens," and that corporations are denied a right secured to them by the Fourteenth Amendment if "they cannot appeal to the courts as other litigants under like conditions and with like protection."

There is another aspect in which the Kansas statute may be viewed. Taken in connection with the principles of general law recognized in that State, that statute, although not imposing any special duties upon railroad companies, in effect says to the plaintiffs Matthews and Trudell, the owners of the elevator property — indeed it says in effect to every individual citizen, and for that matter to every corporation in the State: " If you are sued by a railroad corporation for damage done to its property by fire caused by *your* negligence or in the use of *your* property, the recovery against you shall not exceed the damages proved and the ordinary costs of suit. But if your property is destroyed by fire caused by the operation of the railroad belonging to the same corporation, and you succeed in an action brought to recover damages, you may recover, in addition to the damages proved and the ordinary costs of suit, a reasonable attorney's fee; and if you fail in the action no such attorney's fee shall be taxed against you." In my judgment, such discrimination against a litigant is not consistent with the equal protection of the laws secured by the Fourteenth Amendment.

I submit that any other conclusion is inconsistent with *Gulf, Colorado & Santa Fé Railway* v. *Ellis*, as well as with many other well-considered decisions. A reference to a few adjudged cases will suffice.

The principles which in my judgment should control the determination of cases like the present one are well stated by the Supreme Court of Michigan in *Wilder* v. *Chicago & W. Michigan Railway*, 70 Michigan, 382. That case involved the validity of a provision in a statute of that State authorizing an attorney's fee of $25 to be taxed against a railroad company against which judgment should be rendered in an action for injuries to stock. The court said: "But the imposing of the

attorney's fee of $25 as costs cannot be upheld. The legislature cannot make unjust distinctions between classes of suitors without violating the spirit of the Constitution. Corporations have equal rights with natural persons as far as their privileges in the courts are concerned. They can sue and defend in all courts the same as natural persons, and the law must be administered as to them with the same equality and justice which it bestows upon every suitor, and without which the machinery of the law becomes the engine of tyranny. This statute proposes to punish a railroad company for defending a suit brought against it with a penalty of $25 if it fails to successfully maintain its defence. The individual sues for the loss of his cow, and if it is shown that such loss was occasioned by his own neglect, and through no fault of the company, and he thereby loses his suit, the railroad company can recover only the ordinary statutory costs of $10 in justice's court, but if he succeeds because of the negligence of the company, the plaintiff is permitted to tax the $10 and an additional penalty of $25; for it is nothing more or less than a penalty. Calling it an 'attorney's fee' does not change its real nature or effect. It is a punishment to the company, and a reward to the plaintiff, and an incentive to litigation on his part. This inequality and injustice cannot be sustained upon any principle known to the law. It is repugnant to our form of government and out of harmony with the genius of our free institutions. The legislature cannot give to one party in litigation such privileges as will arm him with special and important pecuniary advantages over his antagonist. 'The genius, the nature and the spirit of our state government amounts to a prohibition of such acts of legislation, and the general principles of law and reason forbid them.' *Durkee* v. *Janesville*, 28 Wisconsin, 464, 468; *Calder* v. *Bull*, 3 Dall. 386, 388. Here the legislature has granted special advantages to one class at the expense and to the detriment of another, and has undertaken to make the courts themselves the active agents in this injustice, and to force them to impose penalties in the disguise of costs upon railroad companies for simply exercising, in certain cases, the common right of every person to make a defence in the courts

when suits are brought against them." These principles were reaffirmed in *Lafferty* v. *Chicago & W. Michigan Railway*, 71 Michigan, 35, and *Grand Rapids Chair Co.* v. *Runnells*, 77 Michigan, 104, 111.

The validity of a statute of Alabama requiring a reasonable attorney's fee, not exceeding a named amount, to be taxed as part of the costs in certain actions, was involved in *South & North Alabama Railroad* v. *Morris*, 65 Alabama, 193, 199. The Supreme Court of Alabama, referring to the Fourteenth Amendment as well as to the state constitution, said: "The clear legal effect of these provisions is to place all persons, natural and corporate, as near as practicable, upon a basis of equality in the enforcement and defence of their rights in courts of justice in this State, except so far as may be otherwise provided in the Constitution. This right, though subject to legislative regulation, cannot be impaired or destroyed under the guise or device of being regulated. Justice cannot be sold, or denied, by the exaction of a pecuniary consideration for its enjoyment from one, when it is given freely and open-handed to another, without money and without price. Nor can it be permitted that litigants shall be debarred from the free exercise of this constitutional right, by the imposition of arbitrary, unjust and odious discriminations, perpetrated under color of establishing peculiar rules for a particular occupation. Unequal, partial and discriminatory legislation, which secures this right to some favored class or classes, and denies it to others, who are thus excluded from that equal protection designed to be secured by the general law of the land, is in clear and manifest opposition to the letter and spirit of the foregoing constitutional provisions. . . . The section of the code under consideration (§ 1715) prescribes a regulation of a peculiar and discriminative character, in reference to certain appeals from justices of the peace. It is not general in its provisions, or applicable to all persons, but it is confined to such as own or control railroads only; and it varies from the general law of the land, by requiring the unsuccessful appellant, in this particular class of cases, to pay an attorney's tax fee, not to exceed twenty dollars. A law

which would require all farmers who raise cotton to pay such a fee, in cases where cotton was the subject-matter of litigation, and the owners of this staple were parties to the suit, would be so discriminating in its nature as to appear manifestly unconstitutional; and one which should confine the tax alone to physicians, or merchants or ministers of the gospel, would be glaring in its obnoxious repugnancy to those cardinal principles of free government which are found incorporated, perhaps, in the Bill of Rights of every state constitution of the various Commonwealths of the American Government. We think this section of the code is antagonistic to these provisions of the state constitution, and is void. *Durkee* v. *Janesville*, 28 Wisconsin, 464; *Gordon* v. *Winchester Association*, 12 Bush, 110; *Greene* v. *Briggs*, 1 Curtis, 327; Cooley's Const. Lim. (3d ed.) § 393. The section in question is also violative of that clause in section 1, Article XIV of the Constitution of the United States, which declares that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.' This guaranty was said by Justice Bradley in *Missouri* v. *Lewis*, 101 U. S. 22, 30, to include 'the equal right to resort to the appropriate courts for redress.' 'It means,' as was further said by the court, 'that no person or class of persons should be denied the same protection which is enjoyed by other persons, or other classes, in the same places and under like circumstances.' The same court, in *United States* v. *Cruikshank*, 92 U. S. 542, 555, per Waite, C. J., used the following language in discussing the foregoing constitutional clause: 'The equality of the rights of citizens is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. That duty was originally assumed by the States, and it still remains there.' *Ward* v. *Flood*, 48 California, 36."

*Coal Company* v. *Rosser*, 53 Ohio St. 12, 22–24, involved the validity of a section of the Revised Statutes of Ohio providing that "if the plaintiff in any action for wages recover the sum claimed by him in his bill of particulars, there shall be included in his costs such fee as the court may allow, but

not in excess of $5, for his attorney; but no such attorney fee shall be taxed in the costs unless said wages shall have been demanded in writing, and not paid within three days after such demand; if the defendant appeal from any such judgment, and the plaintiff on appeal recover a like sum exclusive of interest from the rendition of the judgment before the justice, there shall be included in his costs such additional fee not in excess of $15 for his attorney as the court may allow." The Supreme Court of Ohio said: " Under the statute, to entitle the plaintiff to have an attorney fee taxed against the defendant, he is not required to show that the debtor had funds which he wilfully or arbitrarily or even carelessly refused to apply to pay his debt, nor that a vexatious or dilatory defence had been made to defeat or delay the judgment. No other misconduct by the defendant is required than such as may be implied from a failure to comply with the peremptory written demand made upon him. Whether the debtor interposes or shows a vexatious defence, whether he makes an honest though unsuccessful one, or whether he makes none at all, but instead suffers judgment to be taken against him by default, are all equally immaterial; in either case the statute denounces against him a penalty called an attorney fee if an action is brought on the claim and judgment recovered for the sum demanded. . . . The right to protect property is declared as well as that justice shall not be denied and every one entitled to equal protection. Judicial tribunals are provided for the equal protection of every suitor. The right to retain property already in possession is as sacred as the right to recover it when dispossessed. The right to defend against an action to recover money is as necessary as the right to defend one brought to recover specific real or personal property. An adverse result in either case deprives the defeated party of property." Again: " Upon what principle can a rule of law rest which permits one party or class of people to invoke the action of our tribunals of justice at will, while the other party or another class of citizens does so at the peril of being mulcted in an attorney fee if an honest but unsuccessful defence should be interposed? A statute that imposes this restriction upon

one citizen or class of citizens only denies to him or them the equal protection of the law."

In *Chicago, St. Louis &c. Railroad* v. *Moss*, 60 Mississippi, 641, 646–647, 650–652, which involved the validity of a statute authorizing an attorney's fee to be taxed against the appellant, " whenever an appeal shall be taken from the judgment of any court in any action for damages brought by any citizen of this State against any corporation," the Supreme Court of Mississippi said: " All litigants, whether plaintiff or defendant, should be regarded with equal favor by the law and before the tribunals for administering it, and should have the same right to appeal with others similarly situated. All must have the equal protection of the law and its instrumentalities. The same rule must exist for all in the same circumstances. There may be different rules for appeals and their incidents in different classes of cases, determined by their nature and subjects, but not with respect to the persons by or against whom they are instituted. The subjection of every unsuccessful appellant to a charge for the fee of the attorney for the appellee would afford no ground for complaint as unequal, for it would operate on all, and such a rule for the unsuccessful appellant in certain causes of action, tested by the nature and subject of the actions, will be equally free from objection on the ground of its discriminating character; but to say that where certain persons are plaintiffs and certain persons are defendants, the unsuccessful appellant shall be subjected to burdens not imposed on unsuccessful appellants generally, is to deny the equal protection of the law to the party thus discriminated against. It is to debar certain persons from prosecuting a civil cause before the appellate tribunals of this State. It is an unwarrantable interference with the 'due-course of law' prescribed for litigants generally. . . . It is doubtless true that the act was designed for the relief of citizens who became litigants in actions against corporations, because it applies only when a citizen is plaintiff, and it was assumed that the corporation would be appellant, and to avoid discrimination between parties to the same action it was made to operate on either party as appellant, but it sometimes occurs, and may very

often, that the citizen plaintiff is an appellant, and in such cases the discrimination may operate oppressively on him. The Supreme Court of Alabama declared its act violative of the constitution of that State and of the United States, because of its unjust discrimination in establishing peculiar rules for a particular occupation, i.e., 'such as own or control railroads.' Our objection to the act under consideration is broader, as shown above, embracing in its scope the right of the citizen who sues a corporation, for whom we assert the right to appeal on the same terms granted to the plaintiffs in like cases, i.e., actions for damages against whomsoever brought. The act was intended to deter from the appellate court corporations against whom judgments should be rendered for damages, or citizens of this State suing them for damages. It was conceived in hostility to citizens as plaintiffs or corporations as defendants in such actions. In either view it is partial and discriminating against classes of litigants, denying them access to the appellate courts on the same terms and with the same incidents as other litigants who may be plaintiffs or defendants in actions for damages. It is not applicable to all suitors alike in the class of actions mentioned by it. . . . An act 'which is partial in its operations, intended to affect particular individuals alone or to deprive them of the benefit of the general laws, is unwarranted by the Constitution and is void.' 'A partial law, tending directly or indirectly to deprive a corporation or an individual of rights to property, or to the equal benefits of the general laws of the land, is unconstitutional and void.'"

Cases almost without number could be cited to the same general effect. I refer to the following as bearing more or less upon the general inquiry as to the scope and meaning of the clause in the Fourteenth Amendment prohibiting any State from denying to any person within its jurisdiction the equal protection of the laws. *Jolliffe* v. *Brown*, 14 Washington, 155; *Randolph* v. *Builders and Painters' Supply Co.*, 106 Alabama, 501; *New York Life Ins. Co.* v. *Smith*, (Texas) 41 S. W. Rep. 680; *St. Louis &c. Railway* v. *Williams*, 49 Arkansas, 492; *Denver & Rio Grande Railway Co.* v. *Outcalt*, 2 Colo. App. 395; *Atchison & Neb. Railroad* v. *Baty*, 6 Nebraska, 37; *O'Con-*

*nell* v. *Menominee Bay Shore Lumber Co.*, (Michigan) 71 N. W. Rep. 449; *San Antonio & A. P. Railway* v. *Wilson*, (Texas) 19 S. W. Rep. 910; *Jacksonville* v. *Carpenter*, 77 Wisconsin, 288; *Pearson* v. *Portland*, 69 Maine, 278; *Burrows* v. *Brooks*, (Michigan) 71 N. W. Rep. 460; *Middleton* v. *Middleton*, 54 N. J. Eq. 692; *State* v. *Goodwill*, 33 W. Va. 179. These adjudications rest substantially upon the grounds indicated by this court in *Yick Wo* v. *Hopkins*, 118 U. S. 356, 369, where it was said that "the equal protection of the laws is a pledge of the protection of equal laws."

I do not think that the adjudged cases in this court, to which reference has been made, sustain the validity of the statute of Kansas.

In *Missouri Pacific Railway* v. *Humes*, 115 U. S. 512, 522, this court sustained a statute of Missouri requiring every railroad corporation to erect and maintain fences and cattle guards on the sides of its roads, and for failure to do so subjecting it to liability in double the amount of damages occasioned thereby. The court said: "The omission to erect and maintain such fences and cattle guards in the face of the law would justly be deemed gross negligence, and if, in such cases, where injuries to property are committed, something beyond compensatory damages may be awarded to the owner by way of punishment for the company's negligence, the legislature may fix the amount or prescribe the limit within which the jury may exercise their discretion. The additional damages being by way of punishment, it is clear that the amount may be thus fixed; and it is not a valid objection that the sufferer instead of the State receives them. . . . The power of the State to impose fines and penalties for a violation of its statutory requirements is coeval with government; and the mode in which they shall be enforced, whether at the suit of a private party or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion. The statutes of nearly every State of the Union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property, and make that in-

crease in many cases double, in some cases treble, and even quadruple the actual damages. . . . The objection that the statute of Missouri violates the clause of the Fourteenth Amendment, which prohibits a State to deny to any person within its jurisdiction the equal protection of the laws, is as untenable as that which we have considered. The statute makes no discrimination against any railroad company in its requirements. Each company is subject to the same liability, and from each the same security, by the erection of fences, gates and cattle guards, is exacted, when its road passes through, along or adjoining enclosed or cultivated fields or unenclosed lands. There is no evasion of the rule of equality where all companies are subjected to the same duties and liabilities under similar circumstances."

In *Missouri Pacific Railway* v. *Mackey,* 127 U. S. 205, 209, this court held not to be unconstitutional a statute of Kansas making every railroad company liable for all damages done to one of its employés in consequence of any negligence of its agents or by any mismanagement of its engineers or other employé, to any person sustaining such damage. This court said : "Such legislation does not infringe upon the clause of the Fourteenth Amendment requiring equal protection of the laws, because it is special in its character ; if in conflict at all with that clause, it must be on other grounds. And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws, if all persons brought under its influence are treated alike under the same conditions."

In *Minneapolis & St. Louis Railway* v. *Emmons,* 149 U. S. 364, 367, the court held to be valid a statute of Minnesota requiring railroad companies within a named time to build or cause to be built good and sufficient cattle guards at all wagon crossings and good and substantial fences on each side of their respective roads, and that failure by any company to perform that duty should be deemed an act of negligence, for which it should be liable in treble the amount of damage sustained. This court said : "The extent of the obligations and duties

required of railroad corporations or companies by their char-
ters does not create any limitation upon the State against im-
posing all such further duties as may be deemed essential or
important for the safety of the public, the security of pas-
sengers and employés, or the protection of the property of
adjoining owners. The imposing of proper penalties for the
enforcement of such additional duties is unquestionably within
the police power of the States. No contract with any person,
individual or corporate, can impose restrictions upon the power
of the States in this respect."

In *St. Louis & San Francisco Railway* v. *Mathews*, 165
U. S. 1, 26, this court upheld a statute of Missouri providing that
every railroad corporation owning and operating a railroad
in that State should be responsible in damages to the owner
of any property injured or destroyed by fire communicated
directly or indirectly by locomotive engines in use upon its
railroad — the railroad company being however authorized
to procure insurance on the property upon the route of its
railroad. It was there said: "The right of the citizen not to
have his property burned without compensation is no less to be
regarded than the right of the corporation to set it on fire.
To require the utmost care and diligence of the railroad cor-
porations in taking precautions against the escape of fire from
their engines might not afford sufficient protection to the
owners of property in the neighborhood of the railroads.
When both parties are equally faultless, the legislature may
properly consider it to be just that the duty of insuring pri-
vate property against loss or injury caused by the use of dan-
gerous instruments should rest upon the railroad company,
which employs the instruments and creates the peril for its
own profit, rather than upon the owner of the property, who
has no control over or interest in those instruments. The
very statute now in question, which makes the railroad com-
pany liable in damages for property so destroyed, gives it, for
its protection against such damages, an insurable interest in
the property in danger of destruction, and the right to obtain
insurance thereon in its own behalf; and it may obtain insur-
ance upon all such property generally, without specifying any

particular property." Observe, that the Missouri statute gave the railroad company for its protection against the new liability imposed upon it the right to insure the property likely to be destroyed by fire.

I do not perceive that the judgment now rendered finds support in any adjudication by this court. The above cases proceed upon the general ground that in the exercise of its police power a State may by statute impose additional duties upon railroad corporations, with penalties for the non-performance of such duties, and that such legislation is not, because of its special character, a denial of the equal protection of the laws. It is said to be of the essence of classification that "upon the class are cast duties and burdens different from those resting upon the general public." But here the State does not prescribe any additional duties upon railroad companies in respect of the destruction of property by fire arising from the operating of their roads. It simply imposes a penalty which it does not impose upon other litigants under like circumstances. It only prescribes a punishment for assuming to contest a claim of a particular kind made against it for damages. The railroad company can escape the punishment only by failing to exercise its privilege of resisting in a court of justice a demand which it deems unjust. Undoubtedly, the State may prescribe new duties for a railroad corporation and impose penalties for their non-performance. But, under the guise of exerting its police powers, the State may not prevent access to the courts by all litigants upon equal terms. It may not, to repeat the language of the court in the *Ellis case*, "arbitrarily select one corporation or one class of corporations, one individual or one class of individuals, and visit a penalty upon them which is not imposed upon others guilty of like delinquency." Arbitrary selection cannot, we said in the same case, "be justified by calling it classification." There is no classification here except one that denies the equal protection of the laws. It would seem that what was said in the *Ellis case* was exactly in point, namely, "as no duty is imposed there can be no penalty for non-performance." Instead of prescribing some penalty for the

neglect by the railroad company of duties specifically enjoined upon it, the State attempts — and by the decision just rendered is enabled — to take from the company the right which we declared in the *Ellis case* was secured by the Constitution, namely, the right to "appeal to the courts as other litigants, under like conditions and with like protection."

Some stress is laid upon the fact that the statute under consideration was passed by a State in which fires caused by the operating of railroads may often cause and are likely to cause widespread injury to grass, crops, houses and barns. What, in the light of the authorities, the State may constitutionally do in order to protect its people against dangers of that character I need not stop to consider. The only question here is whether, in the absence of any statutory regulation prescribing what a railroad corporation shall or shall not do in order to guard property against destruction by fire arising from the operating of its road, the State can deny to such a corporation, when defending a suit brought against it to recover damages on the ground of negligent destruction of property, a privilege which it accords to its adversary in the trial of the issues joined. May the State meet the railroad corporation at the doors of its courts of justice and say to it, "If you enter here for the purpose of defending the suit brought against you it must be subject to the condition that a special attorney's fee shall be taxed against you if unsuccessful, while none shall be taxed against the plaintiff if he be unsuccessful?" Nothing has ever heretofore fallen from this court sustaining the proposition that the constitutional pledge of the equal protection of the laws admitted of a litigant, because of its corporate character, being denied in a court of justice privileges of a substantial kind accorded to its opponent. If there is one place under our system of government where all should be in a position to have equal and exact justice done to them, it is a court of justice — a principle which I had supposed was as old as Magna Charta.

In my opinion the statute of Kansas denies to a litigant, upon whom no duty has been imposed by statute and whose liability for wrongs done by it depends upon general princi-

ples of law applicable to all alike, that equality of right given by the law of the land to all suitors, and consequently it should be adjudged to deny the equal protection of the laws. I dissent from the opinion and judgment.