ANNA MIER v. THE PHILLIPS FUEL COMPANY, Appellant.

**Mines and mining:** DAMAGE TO SURFACE: EVIDENCE. In an action for damages for the removal of coal from beneath plaintiff's land, the evidence is reviewed and held sufficient to authorize submission of the question of whether fissures in plaintiff's land was the result of mining operations beneath.

**Removal of coal:** ADMISSIBILITY OF EVIDENCE. In an action for damages to land caused by removal of coal, evidence that coal was discovered in land adjoining that of plaintiff which contained fissures in the surface similar to those in plaintiff's land, was admissible on the question as to whether plaintiff's land contained coal and the removal thereof; but the evidence as to removal of coal from the adjoining land was irrelevant.

**Same.** Evidence tending to show that defendant had mined coal on land adjoining that of plaintiff's was not competent on the question of whether he had actually taken it from plaintiff's land where there was no showing that the entries extended through plaintiff's land to that adjoining.

**Same.** The thickness of a vein of coal under one tract of land is not competent to show its presence under a neighboring tract, where the conditions were shown to be variable in that vicinity.

**Trial:** VIEW BY JURORS. Where the jury could not be aided by applying the evidence of the damages from mining operations, a motion to permit them to view the premises should be overruled.

**Constitutional law:** DUE PROCESS: EQUAL PROTECTION: CLASS LEGISLATION: DOUBLE DAMAGES. Code, section 2485, in providing that mine owners or operators shall be liable in double damages for removing coal from the land of another without permission, is not violative of the federal constitution which guarantees due process of the law and equal protection of the law, nor of the state constitution prohibiting class legislation.

*Appeal from Wapello District Court.*— HON. FRANK W. EICHELBERGER, Judge.

SATURDAY, MAY 19, 1906.

ACTION for double the damages occasioned by the removal of coal from beneath plaintiff's land. Trial to jury resulted in verdict and judgment for the plaintiff. The defendant appeals.— *Reversed.*

*F. G. Orelup* and *McNett & McNett,* for appellant.

*Work & Work* and *W. W. Epps,* for appellee.

LADD, J.— Plaintiff owned the N. ½, S. ½, S. E. ¼ section 2, in township 72 N., of range 14 W. of the fifth P. M. Hoffman owned the forty acres of the ¼ sec. south of plaintiff's and the N. E. ¼ of it belonged to

1. MINES AND
MINING: damage to surface: evidence.

Guthrie. The defendant had leased the land east of this, where it had worked a coal mine for twelve or thirteen years prior to 1902. The mine was abandoned that year, and in the fall the husband of plaintiff first observed cracks in her land. The evidence introduced by plaintiff tended to show that the first ditch began fifty or sixty rods west of her east line and twenty rods from her north line, ran east about ten or fifteen rods, and was fifteen or twenty feet deep and three or four feet wide at some places. Afterwards he discovered another, extending from Hoffman's land about three hundred feet west of the east line, running half way across his land, and then east near the line, where it drained a pond. Another one extended east and west near the north line about twenty rods, commencing that distance from the east line. Later he observed another on the north side, about two hundred feet from the east line, extending down from Guthrie's land ten or fifteen rods south of the north line, and still another, about ten rods south of the north line, ten or fifteen rods long, running from a point about sixty rods west of the east line. He also testified to several cracks running from that first mentioned, and to one near the line between plaintiff's and Guthrie's land, about twenty-five or thirty rods east of her east line and

about that long.   That these cracks existed must be assumed, as the evidence was such that the jury might have so found. Some were but six inches wide, while others were one or two feet and one was three or four feet wide, so that a team got into it.   They varied in depth from a few feet to such a depth that a stone dropped in could not be heard when it reached the bottom.

The number and extent of these cracks was put in issue by the evidence of the defense.   Whether they indicated that a mine had been worked underneath was also in dispute.   But this was the most plausible explanation of their existence advanced on the trial.   The suggestion that they might have been occasioned by landslides resulting from heavy rainfalls (the land being rough and cut with gullies), or from the flowing of quicksand from beneath the surface, or were dry-weather cracks, seemed to have little support, save in the way of conjectures.   Surveys and maps were made of the mine, and defendant's superintendent is positive in his testimony that but two encroachments were made, one to a distance of sixty feet and the other but twenty-five feet.   His credibility was somewhat impaired, however, by his lack of candor in dealing with plaintiff's husband.   Upon being approached by the latter, instead of stating the facts, he proposed the employment of a surveyor, and that the one mistaken pay the expense; also offering to show the map, on which but one of the entries appeared.   Of necessity plaintiff relied on circumstantial evidence.   The mine had been abandoned and was in a condition which rendered an investigation and survey beneath the surface impossible. The existence of the fissures, if there, was not satisfactorily explained, save on the theory that coal had been removed from beneath; and this was somewhat confirmed by the testimony of several witnesses that they had heard explosions of dynamite used in mining below the surface of plaintiff's land.   If explosions occurred at such locality, and the fissures were as related by some of plaintiff's witnesses, the

conclusion reached by the jury, that coal was taken from beneath plaintiff's land, is not only consistent with such facts, but reasonably probable as a deduction therefrom.    See *Asbach v. Railway,* 74 Iowa, 250; *Rhines v. Railway,* 75 Iowa, 599; *Koenigs v. Railway,* 98 Iowa, 575.    The evidence was such as to carry the issue to the jury, and we are not inclined to interfere with the verdict returned.

II. Hoffman, who owned the land immediately south of that of plaintiff, was allowed over objection to testify that in prospecting Henry Phillips discovered coal beneath the surface of his land near plaintiff's line, and also to the existence of cracks therein, near to or crossing said line, similar to those on plaintiff's land.    This evidence was admissible as tending to show that plaintiff's land near by contained coal, and also as bearing on the question of whether coal had been removed therefrom.    But the inquiry as to whether defendant had taken coal from Hoffman's land was neither competent nor relevant to any issue in the case.

*2. REMOVAL OF COAL: admissibility of evidence.*

After having his attention called to a conversation with Henry Phillips, manager of the company, the witness was asked, "What, if anything, did he tell you with reference to being under there — mining under there?"    The objection that this called for hearsay, was incompetent and immaterial, was overruled, and he related a bargain by which Phillips was to pay six hundred dollars for the coal in his forty acres.    Q.    "What, if anything, did he say with reference to the coal under there and whether he got any of it?"    This was objected to as incompetent, immaterial, and irrelevant, and he answered that Phillips came back in two or three weeks and explained that his foreman guessed "there was not much coal under there" and that he did not want it.    Q.    "What, if anything, did you say to him about having mined under there?"    The same objection was overruled, and he answered that he had charged Phillips with knowledge that this was being done, to which

*3. SAME.*

he had responded that he knew nothing about it and promised to go with him to look at the land.   Q.   " State whether or not he ever offered you anything as pay for the coal ? " Over the same objection he was permitted to answer, " Yes, he paid me $100."   As no question of intent or motive is involved in an action like this, the theory on which this evidence must have been introduced doubtless was that it tended to prove that coal actually had been taken from plaintiff's land.   See *State v. Brady,* 100 Iowa, 191.

· The evidence was of collateral facts furnishing no legal presumption in favor of the facts alleged in the petition and the defendant was not bound to be prepared to meet them.   The rule prevails in this state that the happening of a similar injury prior to that for which damages are claimed at the same place and under like circumstances may not be shown as tending to prove defective conditions or the injury.   *Hudson v. Railway,* 59 Iowa, 581; *Frohs v. Dubuque,* 109 Iowa, 219.   Evidence that a coal operator has encroached on one neighbor's land furnishes no evidence that he has taken coal from that of another.   Were there any evidence tending to show that entries extended through plaintiff's land, a different question would arise.   None such was offered.   That the ruling was prejudicial is manifest. The evidence might have been construed as indicating a reckless disregard of the property rights of adjoining owners and may account for the large amount assessed as damages.

III.   One Lloyd was asked the thickness of coal in a mine one and one-half miles away, and over objection answered two and one-half to five feet.   The evidence had no bearing on the case.   The witnesses agreed that

4. SAME.

conditions were variable in the vicinity, and that the fact coal was found under one forty acres did not necessarily indicate that it was under the adjoining forty.

IV.   The court did not abuse its discretion in permitting leading questions and the qualification of those testifying to the value of royalties of coal taken from leased land

was sufficiently established. The estimate of damages of the witness Mier was strictly within the rule approved in *Richardson v. Webster City,* 111 Iowa, 430, even though the question was objectionable. Any error in refusing to allow Phillips to testify whether surface appearances indicated that mining had been done beneath was cured by subsequently receiving his testimony on the subject. The same witness was asked, " Do you know what they actually did pay for land, around there, . ·. . coal land ? " An objection was sustained, and properly so, as the inquiry was not limited to similar lands similarly situated.

V. After plaintiff had rested, defendant moved that the jury be permitted to view the premises. The motion was overruled, and, as we think, properly so. The mine could

5. TRIAL: view by jury.

not be entered and it was unnecessary to examine the land in order to be able to apply the evidence. Viewing the land might have aided the jury in determining whether there were cracks in it and their extent, concerning which the evidence was in conflict; but this would have been owing to examinations made by ·the jury and evidence afforded by the condition of the premises, and this is not permissible. It must be regarded as settled that premises may be viewed by the jury only for the purpose of the better applying the evidence ·introduced in the course of the trial. *Moore v. Railway,* 93 Iowa, 484. The ruling was correct.

VI. The plaintiff was allowed double damages under section 2485 of the Code. This section is found in chap-

6. CONSTITUTIONAL LAW: due process: equal protection: class legislation: double damages.

ter 9 of title 12, the subject of which is " Mines and Mining." The first seven sections relate to the appointment, duties, and the like of inspectors, and then follows the section mentioned, which reads:

The owner or person in charge of any mine shall make or cause to be made an accurate map or plan of the same, on a scale of not less than 100 feet to the inch, showing all

the area mined or excavated and on or before the 1st day of September of each year cause to be made a statement and plan of the progress of the working of the mine up to date, which progress shall be clearly indicated upon the map hereinbefore required. A failure to comply with this provision for 60 days shall authorize the inspector of the district to cause the same to be done at the expense of the owner, which may be recovered in an action against him by the person doing the work, and the map so made shall include and cover the entire mine. All maps shall be open to public inspection. The owner of any mine which is worked out or abandoned, or his agent, shall deliver a correct map thereof to the inspector to be filed in his office. Upon affidavit of any adjoining landowner in the vicinity of said mine, or his agent, that it is necessary for the protection of his property to know how near his land the excavations in the mine extend, the inspector shall make an examination, employing a surveyor therefor if necessary, to determine the length and direction of entries leading toward land of the applicant and the extent of excavation of same on all of his land, if any, and make report of the same to him. The necessary expenses, including compensation of five dollars per day each to the inspector and surveyor, shall be paid by the applicant, except when it shall be shown that said applicant's property has been undermined, in which case the expense shall be paid by the mine owner or operator. Any owner or person operating a mine, who, without permission, takes coal from adjoining lands, shall be liable in double damages therefor and for all expenses caused thereby.

The last paragraph is said to be unconstitutional in that it is inimical to section 1 of the Fourteenth amendment to the Constitution of the United States, prohibiting any state from depriving " any person of life, liberty or property without due process of law," or " any person within its jurisdiction of the equal protection of the laws," and (2) that it violates section 6 of article 1 of the state Constitution, declaring that " all laws of a general nature shall have a uniform operation. The General Assembly shall not grant to any citizen or class of citizens, privileges or immunities,

which upon the same terms shall not equally belong to all citizens."

First, as to the contention that the effect of the provision is to deprive the operator of property without due process of law. This is not so, because the extra damages are punitive in character and imposed as in the nature of a penalty. The state may prescribe regulations for the health, good order, and safety of society and may adopt adequate means for their enforcement. In considering a statute of Missouri imposing upon railroads the duty of fencing their right of way, and, in event of omission, authorizing the assessment of double damages the Supreme Court of the United States observed: " The statutes of nearly every state in the union provide for the increase of damages where the injury complained of results from the neglect of duties imposed for the better security of life and property and make that increase in many cases double, in some cases treble and even quadruple the actual damages. And experience favors this legislation as the most efficient mode of preventing with least inconvenience, the commission of injuries. The decisions of the higher courts have affirmed the validity of such legislation." *Mo. Pac. R. Co. v. Humes,* 115 U. S. 512 (6 Sup. Ct. 110, 29 L. Ed. 463). A similar statute of this state was upheld in *Minneapolis & St. L. R. Co. v. Beckwith,* 129 U. S. 26 (9 Sup. Ct. 207, 32 L. Ed. 585). In *Fidelity Life Ass'n v. Mettler,* 185 U. S. 326 (22 Sup. Ct. 662, 46 L. Ed. 933) a statute of Texas making life insurance companies liable on failure to pay loss for twelve per cent. damages and reasonable attorney's fees was sustained. See *Burlington, C. R. & N. C. Co. v. Dey,* 82 Iowa, 312; *Gano v. Railway,* 114 Iowa, 713. See *St. Louis, I. M. & S. R. R. Co. v. Paul,* 64 Ark. 83 (40 S. W. 705, 62 Am. St. Rep. 154, 37 L. R. A. 508), upholding an act penalizing a railroad for failing to pay employés upon their discharge. The statute does not in express words prohibit encroachments in the coal strata of adjoining land. The rather it assumes that these

are without right and fixes the measure of damages accordingly. In *Atchison, T. & S. F. R. Co. v. Matthews,* 174 U. S. 96 (19 Sup. Ct. 609, 43 L. Ed. 909), a statute of Kansas making the setting out of a fire in the operation of a railroad *prima facie* evidence of negligence and directing the assessment of an attorney's fee in favor of plaintiff in event he shall recover was under consideration, and to the suggestion that, as no duty was imposed on the railroad with respect to precaution or protection against escape of fire, police regulation was not intended, the court said:

We are of the opinion that such omission is not conclusive upon the question of the validity of the statute. We have no right to consider the wisdom of such legislation. Our inquiry runs only to the matter of legislative power. If, in order to accomplish a given beneficial result, a result which depends on the action of a corporation, * * * the Legislature has the power to prescribe a special duty and punish a failure to comply therewith by a penalty, either double damages or attorney's fees, has it not equal power to prescribe the same penalty for failing to accomplish the same result, leaving to the corporation the selection of the means it deems best therefor? Does the power of the Legislature depend on the methods it pursues to accomplish the result? * * * It cannot be too often said that forms are matters of legislative consideration; results and power only are to be considered by the courts.

No statute was needed to declare the duty of the coal operator to avoid encroaching on his neighbor's land. The statute quoted, however, if observed, renders it all but impossible for the mine owner to remove coal from his neighbor's land more than a very few feet without knowing it. For this reason the matter of intent or motive is eliminated and the punishment administered upon proof of the trespass, regardless of whether inadvertent or intentional. The difficulty in detecting the wrong furnishes the reason for the imposition of the penalty. The mine is operated under ground. What is done is hidden from the ordinary view of

men.   No marks or monuments on the surface indicate the extent of the work below nor the limits or boundaries of the excavations.   On these grounds we think the imposition of punitive damages may be justified, as a valid exercise of the police power.   The offense is akin to larceny, and its punishment quite as legitimate.   The attention of the Legislature doubtless was directed to this situation and the necessity of legislation for protection of the property of adjoining owners.   That laws enacted for such purpose do not infringe upon the constitutional inhibition against taking private property save by due process of law is too well established to call for citation of authority.   But see *State v. Schlenker,* 112 Iowa 642; 22 Am. & Eng. Ency. of Law (2d Ed.) 926.

Nor do we think this statute open to the criticism that it is class legislation.   Its object is the protection of landowners against subsurface encroachments.   It extends to all who operate coal mines, at least, and protects all from whose land coal is taken without their consent.   Such classification is uniformly upheld for not only all persons brought under its influence are treated alike under the same conditions but all are brought within its influence who are under the same conditions.   *State v. Gabroski,* 111 Iowa, 496. Counsel contend that the statute to be uniform should have included those operating gold, silver, lead, gypsum, and other mines.   The laws enacted must be construed with reference to conditions within the jurisdiction covered.   For this reason, consideration of gold and silver mines may be eliminated.   Lead is usually found in veins or pockets while gypsum is formed in strata.   But we do not take judicial notice of how these mines are worked and no evidence on that score was introduced.   For this reason it cannot be said that the law is defective in not including them.   Whether all mines are governed by this chapter is not argued and for this reason no opinion is expressed on that subject.   Coal mining has long been recognized in this state as a distinct

occupation and followed by means and by methods peculiar to it, and in so far as disclosed by this record there is no ground for saying that the statute is open to the imputation of discriminating because excluding persons or property similarly situated or demanding like protection.

VII. The court instructed the jury to allow double the damages, if any, caused to the surface. Counsel argue that only those to the coal are contemplated. The damages are those resulting from the taking of the coal, and this may be owing to the value thereof before removal or the injury to the surface occasioned by such taking.

Because of the error in the admission of evidence, the judgment is *reversed*.