# Rhea *v.* Tucker.

### Bill in Equity to enforce Resulting Trust in *Lands.*

1. *Conditional continuance.*—In chancery causes, as at law, the court has a discretionary power in granting continuances on terms; and in the exercise of this discretion, when granting a continuance to a respondent, may require the payment of all the costs by him, and declare such payment, by the next term of the court, a condition precedent to his making further defense to the suit; and his acceptance of the continuance, in such case, is an acceptance of the conditions.

2. *Deposition; waiver of want of notice.*—The objection can not be raised in this court for the first time, by a defendant in a chancery cause, that he had no notice of the filing of the interrogatories to the complainant's witnesses, on whose depositions the decree is founded; and this principle applies to a defendant who, by failing to comply with the orders of the chancellor, had not been allowed to make defense on the final hearing.

3. *Resulting trust in land; parol proof of.*—A resulting trust in lands, arising from the payment of a portion of the purchase-money by the complainants, under an agreement with the defendant that the purchase should be made for their joint benefit, may be established in equity by parol evidence.

4. *Parties to bill; revivor.*—In a suit to enforce a resulting trust in lands, if the plaintiff dies before final decree, the suit should be revived in the name of his heirs : a decree in favor of his personal representative is erroneous.

APPEAL from the Chancery Court of Etowah.

Heard before the Hon. B. B. McCRAW.

The bill in this case was filed on the 25th January, 1871, by John I. Tucker and Lydia Tucker, against William H. Rhea, R. B. Rhea, Jacob Tucker, and David J. Tippens; and sought to establish a resulting trust, in favor of the complainants, in a certain tract of land, of which they had the possession, and which, as they alleged, had been bought by the said Jacob Tucker, and partly paid for with money furnished by them, under an agreement that the purchase should be made for the joint benefit of said Jacob and the complainants, in proportion to the amount furnished by each of them respectively ; said Jacob and John I. Tucker each furnishing three-eighths, and Lydia Tucker the remaining two-eighths. The land was bought by said Jacob Tucker, in 1863, from one J. W. Atkins, who conveyed the title, by agreement with said Jacob, to one A. J. Land, from whom he had procured a temporary loan to complete the payment of the purchase-money; and when the money so borrowed was refunded to Land, by the complainants and said Jacob, he executed a conveyance to said Jacob alone. The complainants, with said Jacob, took possession of the land soon

after said purchase, and they continued in possession up to the filing of their bill. In 1868, R. B. Rhea, having recovered a judgment against said Jacob Tucker, had the land sold under an execution issued on it, and became the purchaser at the sale; and in 1869-70, by agreement with said R. B. Rhea, and in consideration of $500 paid to him, said Jacob conveyed the land to W. H. Rhea, who was a brother of said R. B. Rhea. Said Atkins, from whom Jacob Tucker bought the land, had purchased it from David J. Tippens; and in 1865, said Tippens asserting a vendor's lien on the land, Jacob Tucker, supposing the claim to be legal and valid, gave his note to said Tippens, payable four years after date, in settlement of it. On this note a judgment was rendered in favor of said Tippens, under which the land was sold by the sheriff; said Tippens becoming the purchaser, and receiving the sheriff's deed. These were the main facts alleged in the bill.

Decrees *pro confesso* were taken against all the defendants, but were afterwards set aside, and answers were filed by all the defendants except Jacob Tucker. The facts above stated, as to the several conveyances, were admitted, but each of the respondents denied that the complainants ever had any interest in the land, or had paid any part of the purchase-money; and W. H. Rhea and Tippens each claimed to be a purchaser for valuable consideration without notice. At the January term, 1872, the death of Lydia Tucker, one of the complainants, was suggested, and leave was granted to revive "in the name of her representative when known;" and at rules before the register, in May, 1872, the cause was revived in the name of W. A. Lovins, as her administrator. At the July term, 1872, an order was made for the publication of the testimony, "but without prejudice," and on a subsequent day of the term the following order was made and entered: "Came the parties, by their solicitors; and complainants having announced themselves ready for trial, the respondent W. H. Rhea moved the court for a continuance of the cause. It is ordered by the court, that the cause stand continued; and it is further ordered and adjudged, that the respondent Wm. H Rhea pay all the costs now due in this cause, to be taxed by the register, for which execution may issue *instanter;* and that the payment of the costs by the said Wm. H. Rhea, before the next term of the court, is hereby made a condition precedent to his making further defense to complainants' suit."

At the next ensuing term, in January, 1873, an order was entered, in these words: "It being made to appear to the court, that an order was made and entered in this cause, at

the last term, requiring the respondent Wm. H. Rhea to pay all the costs then due in the cause, as a condition precedent to the continuance of the cause on his motion, and it being made to appear that said order has not been complied with by the said W. H. Rhea : now, on motion of the complainants, it is peremptorily ordered, that he comply with said order by the expiration of the second day of this term ; and it is further ordered, that the register of this court cause the said respondent to be duly notified of this order." At the same term, an order for the publication of the testimony was made, and the cause was submitted for final decree, on pleading and proof ; and in the order of submission, after noting the testimony offered by the parties, it is added : "Respondent W. H. Rhea being in contempt, the court refuses to hear him, or to allow him to be heard, as a respondent in this cause." On final hearing, the chancellor rendered a decree for the complainants ; declaring that John I. Tucker was entitled to an undivided three-eights interest in the land, and said W. H. Lovins, as administrator of Lydia Tucker, to an undivided two-eighths interest; and ordering a sale of the remaining three-eighths interest for the payment of the costs, unless the costs were paid by the defendants within thirty days.

From this decree W. H. Rhea alone appeals, and here assigns as error : "1. The court erred in rendering a decree against this appellant. 2. The court erred in rendering the decree shown in the record. 3. The court erred as shown by the record. 4. The court erred in holding that appellant was in contempt of court, and refusing to hear him, or allow him to be heard, as a respondent in this cause. 5. The court erred in refusing to allow the appellant to be heard when the cause was submitted for decree."

FOSTER & FORNEY, for appellant.—1. A court of equity may compel a party to pay money into court, when he has it in his hands ; but it has no power to prevent a party from making defense to a suit, which he is summoned to defend, on account of the non-payment of costs imposed on him ; especially when it is not shown that he has the ability to pay.

2. The interrogatories were not served on W. H. Rhea, although his answer was then on file, and he had not then been adjudged in contempt. As to him, the decree was founded on *ex-parte* evidence, and he has had no opportunity to be heard against it.

3. The evidence does not come up to the strict rule which is applied, when a resulting trust is sought to be established

[Rhea v. Tucker.]

by parol.—*Conner v. Tuck*, 11 Ala. 800; *Larkins v. Rhodes*, 5 Porter, 198; *Boyd v. McLean*, 1 Johns. 586; *Cross v. Norton*, 8 Mod. 235; Sugden on Vendors, 620.

G. C. ELLIS, *contra*, cited *Waller v. Sultzbacher*, 38 Ala. 318; *Ex parte Walker*, 25 Ala. 81; *Andrews & Bro. v. Jones*, 10 Ala. 400; *Caple v. McCollum*, 27 Ala. 461.

STONE, J.—In *Waller v. Sultzbacher*, 38 Ala. 318, we said: "One of the conditions, upon which the defendant obtained the continuance at the fall term, 1860, was, that if the costs were not paid, in ninety days after the adjournment of the court, the defendant's plea should be stricken from the file, and the plaintiffs have judgment by *nil dicit*, with inquiry. The defendant did not question the right of the court to impose these terms, but accepted the same. The order of the court became thereby an agreement of record between the parties, and the defendant can not complain that it was enforced against him. The record shows that the costs were not paid within the ninety days; and accordingly the court did not err in striking the defendant's plea from the file, and giving the plaintiff judgment by *nil dicit*."

The rule declared above has been announced, in substance, in many of the decisions of this court, on that and kindred questions. They rest on two well-recognized principles: the power of the court to impose conditions, in promotion of the ends of justice, on which it accords the exercise of discretionary powers; and the binding efficacy of agreements, entered of record, which are implied from the acceptance of the order, with the conditions annexed. Section 877 of the Revised Code declares, that "an attorney has authority to bind his client, in any action or proceeding, by any agreement in relation to such cause, made in writing, or by an entry to be made on the minutes of the court."—See *Stephenson v. Mansony*, 4 Ala. 317; *Stephens v. Brodnax*, 5 Ala. 258; *Reese v. Billing*, 9 Ala. 263; *Walker v. Hale*, 16 Ala. 26; *Edwards v. Lewis*, 18 Ala. 494; *Gowen v. Jones*, 20 Ala. 128.

We are aware that, in what we have said above, we are treading on delicate ground. Discretionary powers may be abused. Still, they do, and must exist; and there is rarely any redress for their abuse. The safety of the public does, and must, rest in the strong sense of the right, which should always preside in such ministrations.

The present is a suit in chancery; and the chancellor, at the July term, 1872, granted to the defendant, W. H. Rhea, a continuance of the cause, and further "ordered and adjudged that the respondent W. H. Rhea pay all the cost now due in

this cause, * * * and that the payment of the cost by the said W. H. Rhea, before the next term of this court, is hereby made a condition precedent to his making further defense to complainants' suit." The defendant accepted the continuance, and must be held to an implied agreement to observe, keep, and submit to the conditions therein imposed. We can perceive no reason for laying down a rule for the construction and enforcement of conditions imposed in granting continuances in chancery, other and different from the rule as to conditions in continuances at law, declared in *Waller v. Sultzbacher, supra.* We, therefore, hold that, in refusing to allow W. H. Rhea to defend further, because he had failed to pay the costs, as required by the chancellor's order of continuance, the chancellor did not err.

2. It is objected for appellant, that the decree of the chancellor, granting relief to complainants, was founded on depositions, given on interrogatories propounded, of which neither W. H. Rhea, nor his solicitor of record, had any notice. The record fails to show that notice of the interrogatories was given. The record shows that such notice was given to the other defendants, who had answered the bill; and nothing found in the record discloses why W. H. Rhea was not notified, or that the question of such failure was called to the attention of the chancellor. No motion was made below to suppress the depositions, or to disallow them as evidence against W. H. Rhea. Having been adjudged in contempt, and denied the right to be heard in defense on the final trial, this would probably excuse him for not moving then to suppress. But, if he was entitled to notice, and had neither received nor waived it, the question arises, why did he accept such onerous terms, as a condition of continuance? It will be remembered that order was made at the July term, 1872. He had been previously allowed to answer, and his answer had been filed. He was not then in contempt. As the facts appear in this record, he could have had the complainants' testimony suppressed, for the want of notice to him of the filing of the interrogatories, unless there was some reason, not disclosed, why he was not entitled to notice. The testimony of complainants suppressed, they, the complainants, would have been forced to move for a continuance, that they might retake their testimony. This would have relieved W. H. Rhea of the burden of the continuance, and its conditions.

Without noticing other answers, which might probably be made to this objection, we think it is enough to say, that we will not consider this objection, when made in this court for the first time. If it be said W. H. Rhea had been denied

the right to make defense, and therefore could not make the objection in the Chancery Court; the answer is, that such his disability was brought about by his own laches, and hence he can not be heard to complain that he was there disbarred; nor be allowed to urge objections here, which would be denied to parties who had observed and obeyed the orders of the chancellor. To hold otherwise, would be to offer a premium for what the law calls contempt of one of the superior courts of the commonwealth.

3. We think the testimony in this record is sufficient to justify the finding of the chancellor, that Mrs. Lydia Tucker and John I. Tucker are entitled to the relief they severally pray; and such proof, if clearly made out, need not be in writing.—*Andrews v. Jones*, 10 Ala. 400, 420; *Mosely v. Lane*, 27 Ala. 62.

4. There is one error in the decree in this cause, which compels its reversal. This suit was commenced by parties in possession, to have a trust declared in their favor, and to obtain title to certain interests in the lands described in the bill. The interest claimed is an interest in the realty. When Mrs. Tucker died, her interest descended to her heirs, and did not pass to her personal representative. No title can properly be decreed to him. True, under our statutes, the administrator is clothed with certain powers as to the realty, but this gives him no right to have the title decreed to him. He can only assert the powers conferred by the statute. Proof that Mrs. Tucker was entitled to two-eighths (or one fourth) of the land, will not, *per se,* uphold a decree of two-eighths to her administrator. Her heirs alone can claim and recover the title. Jacob Tucker has made conveyances, with covenants of warranty. Whether the purchase-money has been paid to him in full, the record does not inform us. We are not sufficiently advised on these several matters to determine who is entitled to the part which descends to him. We say *descends*, for the record says nothing of a will by Mrs. Tucker.—Rev. Code, § 1888; *Delony v. Walker*, 9 Porter, 497; 1 Brick. Dig. 594, § 28; *Stewart v. Anderson*, 10 Ala. 504; *Carpenter v. Chaudron*, 21 Ala. 72; *Kennedy v. McCartney*, 4 Porter, 141.

The decree of the chancellor is reversed, and the cause remanded, to be proceeded in according to the principles of this opinion.