A. H. KELLER and M. K. WHITNEY v. T. W. HARRISON and GEORGE TELFORD, Appellants.

**Real property:** ADVERSE POSSESSION. One in possession of a tract
1 of land under a claim that it formed part of a certain government subdivision, when it in fact was part of another subdivision, can not acquire title by adverse possession so as to defeat an action in ejectment by .the owner; as there must have been an entry and ouster of the true owner to start the statute of limitations.

**Same:** EJECTMENT: LIMITATIONS: EVIDENCE. · The recorded plat and
2 field notes made by a county surveyor are merely evidence of the location of the lines and corners, though not conclusive, of which no one is charged with constructive notice, and they do not constitute any link in the chain of title or afford information as to who may be in possession; and the fact that the record thereof has existed for many years will not bar an action by the true owner for the possession of the land.

**Same:** LACHES. The defense of laches is an equitable one arising
3 only where from lapse of time and neglect of plaintiff it would

be inequitable to permit him to enforce his legal rights; and to be available the defense must be pleaded.

**Mortgages:** FORECLOSURE: TITLE. Where no sheriff's deed was issued in a mortgage foreclosure proceeding the title of the owner who acquired an assignment of the certificate of sale was not divested.

**Real property:** SURVEYS: EVIDENCE. Diagrams prepared by a county surveyor to illustrate a prior survey, shown by him to be correct, are receivable in evidence to aid the court and jury in more clearly understanding and applying the evidence, and to explain the effect of a subsequent survey.

**Ejectment:** EVIDENCE. In an action for the possession of a tract of land claimed by the plaintiff as part of a certain subdivision, while it in fact belonged to another subdivision, evidence that another party had purchased land in the county which upon measurement exceeded the proper acreage was immaterial and properly excluded.

**Same:** TRIAL: VIEW OF PREMISES: INSTRUCTION. The purpose of permitting a jury to view the premises is to enable them to better understand the testimony and thus make a more intelligent application of the evidence to the issues; but they are to consider the evidence in the light of their view of the premises and base their verdict on the evidence and not upon the view, and they should be so advised by the court. In this case the fact that the jury while viewing the premises had with them photographs offered in evidence and undertook to ascertain points from which they 'were taken so as to understand their applicability, and also made measurements from undisputed locations not materially differing from the evidence, while perhaps improper, was not prejudicial; and for that reason the omission to instruct with reference to their duty in viewing the premises was without prejudice.

**Expert evidence:** FEES. In making a survey and investigating one already made a surveyor is conducting a scientific examination, within the meaning of Code, section 4661, and when called as a witness to state the results is entitled to the fees allowed experts.

**Appeal:** JUDGMENT: TAXATION OF COSTS: REVIEW. An appeal from a final judgment and also from an order taxing the costs of a continuance may be taken in the same case, and the appellate court will consolidate them when separately appealed and review all errors assigned as on an appeal from final judgment.

**Same:** TAXATION OF COSTS: WAIVER OF OBJECTIONS. A party accepting a continuance at his request, but objecting to the terms imposed, does not waive his right to question the validity of the terms on appeal, because exceeding those authorized by statute.

**Same:** CONTINUANCE OF CAUSE: TAXABLE COSTS. The costs which may be taxed against a party applying for continuance of a cause are only such as are taxable under the statute; they do not include attorney's fees or expenses of travel of a party, except on subpoena.

Weaver, J., dissenting.

*Appeal from Palo Alto District Court.*—HON. D. F. COYLE, Judge.

TUESDAY, DECEMBER 13, 1910.

ACTION in ejectment for the possession of a strip of land and damages for its wrongful detention. Trial to jury resulted in a judgment as prayed. The defendants appeal. *Affirmed.*

*Dwight G. McCarty* and *T. W. Harrison,* for appellants.

*E. A.* and *W. H. Morling,* for appellees.

LADD, J.—The facts are recited with sufficient fullness in the opinion rendered on the former appeal, 139 Iowa, 383, and though witnesses who had not testified on the first trial were called, the additional evidence was not such as to exact any change from the conclusions therein announced. Upon remand, defendants filed an amendment to the answer pleading that the action was barred by the statute of limitations in that more than ten years had elapsed since it might have been maintained. The issue so pleaded was not submitted to the jury and of this complaint is made.

I. The survey by defendant Harrison, as county

surveyor, was made in 1873, and he has been in possession of the twenty acres in dispute since that time. As

1. REAL PROPERTY: adverse possession.

such possession was under claim to it as part of the N. W. ¼ of section 28, it was held on the former appeal that if this strip was not a portion thereof, but was a part of the N. E. ¼ of that section, his possession could not have been adverse. Such has been the doctrine of this court since *Grube v. Wells,* 34 Iowa, 148, which was followed in *Fisher v. Muecke,* 82 Iowa, 547; *Goldsborough v. Pidduck,* 87 Iowa, 599; *Skinner v. Crawford,* 54 Iowa, 119; *Wacha v. Brown,* 78 Iowa, 432; *Heinz v. Cramer,* 84 Iowa, 497, and *Jordan v. Ferree,* 101 Iowa, 444.

These decisions proceed on the theory that the possession must be adverse in order to start the running of the statute of limitations, and this was recognized in *Grube v. Wells,* citing authorities holding that before a party may avail himself of that statute as a defense in an action of right, there must have been an entry and an ouster of the true owner for that until disseisin any possession of another is presumed to be subservient to his title, and, regardless of the time of its continuance, will not operate to bar recovery by the title holder. *Jones v. Hockman,* 12 Iowa, 101; id., 16 Iowa, 487; *Wright v. Keithler,* 7 Iowa, 92. Neither party has noticed these cases in the briefs, and as they have stood unchallenged for nearly fifty years, we are not inclined to reconsider them. See note to *Jasperson v. Scharnikow,* 150 Fed. 571 (15 L. R. A. (N. S.) 1178). There was no error in not submitting this issue to the jury.

II. Appellant argues that inasmuch as the field notes and plat made by the county surveyor were required to

2. SAME: ejectment: limitations: evidence.

be recorded and his surveys are declared by statute "presumptively correct" (section 534, Code), and, as between specified persons, a certified copy of the record is made "presumptive evi-

dence of the survey and of the facts herein required to be set forth" (section 538, Code), the recording of defendant's survey should be held to have carried notice to all the world of his claim to the strip of land in dispute, and the statute be held to have begun to run then, or, at least, when by the exercise of reasonable diligence the error, if any, in the survey might have been discovered. But such a record is not of any link in the chain of title nor does it give information as to who may be in possession. It is merely evidence of the location of the lines and corners, though not conclusive, of which no one is charged with constructive notice. The object in recording is to preserve the evidence which has no bearing on ownership, possession, or title, save as these may tend to show the true location of the boundaries between the several tracts of land. The point is not well taken.

Nor is there anything in the suggestion that the action was barred because of laches. The discrepancy between the line as located by defendant's survey and the 3. SAME: laches. true line, if any, was not discovered until shortly before this action was begun, so that abandonment of all claim to the strip in dispute could not well be presumed. Moreover, the doctrine of stale demand is a purely equitable one, arising only when from lapse of time and the laches of plaintiff it would be inequitable to allow a party to enforce his legal rights, and as no equitable defense was pleaded, it was not available to defendant. *McFarlane v. Grober,* 70 Ark. 371 (69 S. W. 56, 91 Am. St. Rep. 84); *Wilson v. Nichols,* 72 Conn. 173 (43 Atl. 1052); *Ellis v. Smith,* 112 Ga. 480 (37 S. E. 739); *Bank v. Baker,* 176 Mass. 294 (57 N. E. 603); Wood on Limitations, section 60.

III. The plea in abatement is without support in the evidence. A mortgage on the land was foreclosed, the land sold thereunder, and a certificate of sale issued. Subsequently, it was assigned to the plaintiff Keller. No

sheriff's deed was issued and therefore the title of plaintiffs never was divested. Some reliance appears to have been placed on a plea of estoppel, but that was disposed of by the answer of the jury to a special interrogatory.

4. MORTGAGES: foreclosure: title.

IV. The county surveyor, Leroy Grout, since deceased, prepared diagrams illustrating the survey as made by the defendant in 1873 and recorded. His testimony that these were accurate was uncontradicted, and as the lines of defendant's survey as appeared on the plat accompanying it did not indicate any discrepancies or irregularities in the different subdivisions, these diagrams aided the court and jury in more clearly understanding and applying the evidence adduced. Moreover, Grout testified as an expert, and by these diagrams he was able more clearly than by word of mouth to explain the survey as effected by the defendant. There was no error in receiving them in evidence. *East Tenn., V. & G. Ry. v. Watson,* 90 Ala. 41 (7 South. 813); *Riddle v. Germantown,* 117 N. C. 387 (23 S. E. 332); *Blair v. Pelham,* 118 Mass. 420; *Brantly v. Huff,* 62 Ga. 532.

5. REAL PROPERTY: surveys: evidence.

V. Objection was sustained which was interposed to the testimony of a witness that he had bought a quarter section in the county as one hundred and sixty acres, and upon survey it measured one hundred and ninety acres. The ruling was right. The testimony had no bearing on the issues being tried.

6. EJECTMENT: evidence.

VI. At the conclusion of the evidence, the jury were allowed to view the premises, being conducted by the sheriff, accompanied by the judge. This was by consent, the court saying to the jury before departing from the courtroom:

7. SAME: trial: view of premises: instruction.

Gentlemen of the jury, I am about to excuse you until one o'clock this afternoon, at which time you will appear here to be conducted in a body to view the prem-

ises in dispute between the parties to this action. The statute provides that you shall be conducted by an officer to the place to be viewed, which shall be shown to you by some person appointed by the court for that purpose. The parties in this case have agreed that the court himself may go with you and act as the person to show you the premises. The statute further provides that when you are thus absent viewing the premises that no one save the person selected to show the premises to you shall speak to you on any subject connected with the trial. It will therefore be your duty while viewing the premises to refrain from conversing with anybody in relation to the matters in trial, and to reach your own conclusions from the view of the premises that you make.

This was not excepted to, and its only bearing is with respect to the court's omission to refer to the subject in the instructions subsequently given. After the verdict had been returned, it was made to appear, in support of the motion for new trial, that two of the jurors took measuring lines with them, and upon reaching the premises tied these together and first measured on the north section line from the end of the fence defendants had constructed on what they claimed was the boundary to the stake set by Grout, as marking the true quarter corner, to see, as they explained, if it was the real post, from which they might take their views, and they also measured from what they supposed was the northeast corner of the section over to the end of Harrison's fence mentioned, and from thereon west to the end of a division fence in the section north and opposite the line as claimed by plaintiffs, and then on to what they supposed to be the northwest corner of the section. Two other jurors kept tally and they made out that the north sectional line overran a mile a little. The jurors testified that the purpose of these measurements was to find the locations referred to in the testimony and that they were not discussed save in making them. The jurors also had different photo-

graphs of the premises which had been introduced in evidence with them and undertook to ascertain the points from which taken, so as to understand their applicability. Though taking these photographs with them may not have been regular, the jury, to apply the evidence, might have sought to ascertain the places from which taken had these not been with them, and while their conduct in this respect is not to be approved, it must have been without prejudice.

Nor are we inclined to regard the making of the measurements as prejudicial. There was no dispute as to the location of defendant's fence or the stake as set by Grout, or of the division fence in the section to the north, or as to the distance between the section corners, and the measurements developed no differences material to the issues being tried. We do not say such conduct is to be approved. On the contrary, it should have been guarded against by appropriate admonitions, before viewing the premises, as to the object to be accomplished in doing so. As said in *Close v. Samm,* 27 Iowa, 503, this "was to enable the jury by view of the premises or place to better understand the testimony of the witnesses respecting the same, and thereby the more intelligently to apply the testimony to the issues on trial before them, and not to make them silent witnesses in the case, burdened with testimony unknown to both parties, and in respect to which no opportunity to cross-examine or correction of error, if any, could be afforded either party." See *Moore v. Ry.,* 93 Iowa, 487; *Mier v. Phillips Fuel Co.,* 130 Iowa, 570. The jurors are to consider the evidence in the light of their view of the premises, but base their verdict on the evidence, and not on the view. *Thompson v. Keokuk,* 61 Iowa, 187; *Guinn v. Ry.,* 131 Iowa, 680.

In *Morrison v. Railway* 84 Iowa, 663, it was said that, "When a view is permitted, the jury should not only be instructed as to the purpose, but cautioned not to consider their own observations as evidence. It is upon

the evidence as understood in the light of their view that they must decide." This was said in denouncing an instruction given as erroneous; the point as to whether the court was required to instruct on the subject not being raised. This was pointed out in *Cox v. Railway*, 95 Iowa, 54, where the court held an instruction not to have been necessary though desirable, where the jury had been previously admonished concerning the object and purpose of making the view. But it was not held that in event no such admonition has been given, it would be error not to give such an instruction, unless requested. Viewing the premises, is but an incident of the trial with the design of aiding the triers the better to discharge their duties, and whether to guard against the use of what was observed an instruction is essential, necessarily depends largely upon the nature of the case. Where the conclusion of the jury, as finally expressed in the verdict, must necessarily rest on evidence of conditions, conduct, and events preceding the view by many years and all that could have been observed by them was the topography of the land in the neighborhood of the disputed lines and corners and the trees and fences thereon, it would seem that no instructions were needed to limit the consideration of what might be seen to a better understanding and application of the evidence adduced. To what other purpose might it have been put? An examination of this record affords no answer to this inquiry, and for that reason we are inclined to regard the omission to instruct as without prejudice.

VII. Exception is taken to an order taxing fees allowed an expert in favor of Grout on the first trial. The record disclosed that as county surveyor, he surveyed the premises and investigated the survey as made by defendant and testified concerning both. Section 4661 of the Code provides that "witnesses called to testify only to an opinion founded

8. EXPERT
EVIDENCE:
fees.

on the special study or experience in any branch of science or to make scientific or professional examinations and state the result thereof, shall receive additional compensation to be fixed by the court with reference to the time employed and the degrees of learning and skill required, but such additional compensation shall not exceed four dollars per day while so employed."

In making the survey and in investigating defendant's survey, Grout conducted a scientific examination, and as a witness was called upon to state the results, and this clearly was within the meaning of the statute. See *Lyon v. Wilkes,* 1 Cow. (N. Y.) 591. Other errors assigned require no consideration.

Having discovered no prejudicial error in the record, the judgment is *affirmed.*

SUPPLEMENTAL OPINION.

FRIDAY, MAY 12, 1911.

LADD, J.—I. After, appeal had been perfected in the above-entitled case, another appeal was taken from an order taxing certain costs and expenses to defendant Harrison, upon sustaining a motion for continuance. These appeals were prosecuted and submitted separately to this court, and separate opinions filed. Petitions for rehearing have been submitted, and that assailing the above opinion is overruled, and the other petition is sustained, not owing to any change in the views expressed by the majority or by those dissenting, but for the reason that both appeals are in the same cause, and, though presented in separate abstracts and arguments, should have been considered and disposed of as merely bringing distinct portions of the same record to the attention of this court. Had the abstract in the second been incorporated in the

*9. APPEAL: judgment: taxation of costs: review.*

first appeal, this could not well be questioned. That the two abstracts were bound separately ought to make no difference. We are the more inclined to this view because of the differences of opinion as to whether an interlocutory order taxing costs is appealable; four justices being of the opinion that it is not appealable, and the other two that it is. It ought not to be said, then, that there was not some ground for the course pursued by counsel for appellant in prosecuting separate appeals, when all errors in the record might have been reviewed on a single appeal. As on the appeal from the final judgment, every exception saved might have been presented, we have concluded that the court on its own motion should have consolidated the appeals which were pending and submitted. at the same time, and reviewed the errors assigned and argued as though all the abstracts and arguments had been filed in the appeal from the final judgment. This is saying no more than that the printing of portions of the record in different abstracts, though irregular, will not deprive a party of having the errors assigned and argued in either reviewed.

II. The cause had been noticed for trial at the December, 1908, term of the district court, and, after motion for change of forum had been overruled, defendants applied for a continuance, on the ground that one of them, Harrison, had suddenly become too ill to proceed with the trial. Objections thereto were interposed, but on full hearing a continuance was ordered, on condition that said defendant pay the taxable costs of the term, amounting to $19.50, the expenses of plaintiff in attending court in the sum of $144, and $25 for plaintiff's attorney as compensation for resisting the motion for continuance. A judgment was entered against said Harrison for the aggregate amount of these sums. The record does not show acceptance or acquiescence in the condition on

10. SAME.
taxation
of costs:
waiver of
objection.

his part. He excepted to the ruling, and when the statute defines the terms on which a continuance may be granted acquiescence in the order postponing the trial does not estop the moving party from challenging the legality of the terms imposed. Our statute, in designating the terms on which continuances may be ordered, by fair implication excludes authority to impose others, and if others are named as conditions upon which the order is entered these are in excess of authority, and may be challenged as any other like rulings. The trial ought not to be postponed, unless the party applying is entitled thereto, and that he acquiesces in that portion of the order rightfully entered ought not to interfere with taking exception to another portion, which the court erroneously has included. There are some decisions seemingly to the contrary, but which will be found on examination to proceed on the theory that as the court might impose terms within its discretion, the party on whom these have been imposed may not, after accepting them, assail the order as an abuse of discretion. Thus *Brown v. Warren,* 17 Nev. 417 (30 Pac. 1078), follows the decisions of New York, where the statute expressly authorizes the court, as a condition of postponing trial, to impose reasonable terms, and it is said that if the mover does not like the terms imposed he should not take the rule. The Alabama cases proceed on the same theory. *Rhea v. Tucker,* 56 Ala. 450. In this state the terms on which a continuance may be granted are defined, and as any others are in excess of the court's authority acquiescence in the order is not to be presumed to extend beyond its lawful conditions. The cause was tried at a subsequent term of court, and a judgment entered on the merits, as appears in the foregoing petition. Was it error to tax the costs, expenses, and attorney's fees as above stated?

The only provisions for the taxation of costs upon the continuation of an action on application are found in

sections 3662 and 3671 of the Code. The former pro-

11. SAME.
continuance
of cause:
taxable costs.

vides that: "When time is asked for mak-
ing application for continuance, the cause
shall not lose its place on the calendar, or
it may be continued at the option of the other party, and
at the cost of the party applying therefor, for which cost
judgment may at once be entered by the clerk, unless the
contrary be agreed between the parties or ordered by the
court." The latter reads: "Every continuance granted
shall be at the cost of the party applying therefor unless
otherwise ordered by the court."

It will be noted that in neither section is anything
but the costs of the action referred to, and we think by
costs is meant the taxable costs in the case. At the com-
mon law, costs were not recoverable *eo nomine*. If the
plaintiff failed to recover, he was punished by amercement
for false clamor, and if the judgment was entered against
defendant he was punished at the court's discretion by
exacting payment of the costs of litigation. Later the
matter was regulated by statute, and it is now quite gen-
erally held that the word "costs" has a legal significa-
tion, and that it includes only those expenditures which
are by statute taxable, and to be included in the judg-
ment. *State v. Board of Commissioners,* 14 Ohio Cir.
Ct. R. 26; *Musser v. Good,* 11 Serg. & R. (Pa.) 247;
*Studwell v. Cooke,* 38 Conn. 549; *Apperson v. Insurance
Co.,* 38 N. J. Law, 388; *Neher v. Crawford,* 10 N. M.
725 (65 Pac. 156); *City of St. Louis v. Meintz,* 107 Mo.
611 (18 S. W. 30); *Johnson v. Railway,* 29 Minn. 425
(13 N. W. 673); *Bennett v. Korth,* 37 Kan. 235 (15
Pac. 221, 1 Am. St. Rep., 248); *Noyes v. State,* 46
Wis. 250 (1 N. W. 1, 32 Am. Rep. 710); 24 Cyc. 24 *et
seq.* It is elementary that attorney's fees and expenses
of travel of a party, save on subpoena, are not taxable
costs within the meaning of the statute defining what
costs may be taxed, and for this reason the court erred

in including these in the judgment entered in ordering a continuance of the action. The judgment on the merits was rightly affirmed, but the taxation of costs will be modified by eliminating the items last mentioned. *Modified* and *affirmed*.

WEAVER, J. (dissenting).—The authority of the court to impose terms upon an order for continuance is inherent, and there was no error in requiring the moving party to pay the reasonable expenses incurred in preparation for trial. 4 Ency. Pl. & Pr. 888; 9 Cyc. 151. The defendant, by availing himself of the order of continuance, waived the right to question such order on appeal. 9 Cyc. 152; *Humes v. O'Bryan*, 74 Ala. 64; *Rhea v. Tucker*, 56 Ala. 450; *Brown v. Warren*, 17 Nev. 417 (30 Pac. 1078). See, also, as to this and other phases of the subject: *Robinson v. Railroad Co.*, 73 Iowa, 506; *Pomeroy v. Bell*, 118 Cal. 635 (50 Pac. 683); *Barney v. Love*, 101 Mich. 543 (60 N. W. 58); *Lewis v. Wood*, 42 Ala. 502; *Baumberger v. Arff*, 96 Cal. 261 (31 Pac. 53); *Burton v. Power*, 4 Tex. 380; *Knox v. Arnold*, 1 Wis. 76; *Hamilton v. Cooper*, Walker (Miss.) 542 (12 Am. Dec. 588); *Gilliland v. Rappleyea*, 15 N. J. Law, 138; *Walker v. Greentree*, 12 N. C. 367; *McFarlane v. Moore*, 1 Tenn. 32 (3 Am. Dec. 752).

That attorney's fees and personal expenses are "taxable costs" I do not contend; nor do I argue that the "costs" mentioned in the statute include items of that character. The power for which I contend is inherent in the court, and the Legislature has never attempted to limit or take it away. All that section purposes to do is to designate the party to whom the taxable costs shall be charged, unless otherwise ordered by the court. It in no manner takes away or limits the time-honored authority of the court to attach other reasonable terms to the granting of an order of continuance. The majority does not

speak quite advisedly when it says that the authorities relied upon by me are all from jurisdictions whose statutes are broader than our own. By way of illustration, I call attention to the state of California, which has a statute practically the same as our own, and there it has frequently been held that the imposition of such reasonable terms in excess of taxable costs is not an abuse of the court's authority. See *Pomeroy v. Bell, supra; Baumberger v. Arff, supra.*

For the reasons suggested, and because I think this decision works the surrender of an important judicial power for the due administration of justice, I dissent.

---

CITY OF SIOUX CITY Appellant, v. SIMMONS HARDWARE COMPANY.

**Nuisance:** OBSTRUCTION OF WATER COURSE. In this action to abate a nuisance alleged to have been created by defendant by the erection of a culvert or conduit, through which the water of a small stream was required to pass, it is held that the conduit is inadequate and so constructed as to afford an obstacle likely to obstruct the passage of the water.

**Municipal corporations:** NUISANCE: ABATEMENT: PARTIES. A city has the right not merely as a private property owner but in behalf of the public to cause the abatement of an obstruction in a stream, the consequence of which is to damage or reasonably threaten injury to the neighboring property.

**Same:** USE OF STREAM BY A CITY: OBSTRUCTION. A city may make use of a stream for the purpose of discharging into it through storm sewers the water collected from its streets in times of excessive rainfall; but any obstruction to such use of a stream, resulting in injury to property in the neighborhood and to the streets of the city, will constitute a nuisance.

**Same:** ORDINANCES: REASONABLENESS: BURDEN OF PROOF. A city may enact a valid ordinance, which is reasonable in its provisions, prohibiting the erection of any building or other structure over a stream without leaving a specified area unobstructed for the

flow of water in the natural channel; and the burden of show-ing that the ordinance is an unreasonable regulation is upon the one who has violated its provisions.

**Same:** ENFORCEMENT OF ORDINANCES. While a city may not main-tain a general equitable action to enjoin and abate a nuisance on the ground of injury to its citizens, yet under its general police power to prevent injury or annoyance from anything dan-gerous, offensive or unhealthy, and to cause any nuisance to be abated, it has power to prevent such injury by enforcing the regulations of an ordinance properly adopted; and this is es-pecially true where the city itself owns the property imperiled by any unusual flooding of the stream.

**Same:** USE OF STREETS: RESTRICTIVE CONDITIONS: BURDEN OF PROOF. While an ordinance must be general in its nature and applicable to all persons in similar situations, yet a city having occasion in a proper exercise of its power to permit the use of a part of a street by a particular individual in the construction of a building, may impose as a condition of such use that a passage way for the water of a stream within the city shall be of·a speci-fied size; and in a suit to abate as a nuisance an obstruction in the stream, because of a violation of the conditions imposed, the city need not show that the obstruction violating such con-ditions, which was intended for the protection of the general public, is a nuisance; but the individual guilty of such violation has the burden of showing that the condition is unreasonable and imposes restrictions which in no event are necessary for the public protection.

**Same:** EQUITABLE ENFORCEMENT OF CONDITIONS. A city owning a portion of a street, the public character of which has been ter-minated, may contract with an individual for the erection of a building thereon on condition that he shall construct an adequate passageway for the waters of a stream passing under the build-ing, and may enforce such conditions in equity irrespective of the question of nuisance; there being no adequate remedy at law.

**Same:** ESTOPPEL. Where as in this case a city authorized by ordi-nance the private construction of a conduit of a specified size for the passage of a stream, and provided that it should be con-structed under the plan of the city engineer and subject to his approval, but the defendant in constructing the same procured no plans of the engineer nor did he request or procure his approval of the structure, the city was not estopped from com-plaining that the conduit did not comply with the ordinance.

**Same:** OBSTRUCTION OF WATER COURSE: RELIEF. It appears in this

action that the conduit was so constructed as to obstruct the passage of the water, but that by a change in the method of supporting it, which might be done at a reasonable expense and also be made adequate for the passage of water, a destruction of the same and the building erected thereover will not be ordered, but defendant is required to reconstruct the conduit.

On a petition for rehearing it is held however, that as the original opinion was predicated upon an ordinance imposing duties on the defendant the parties may arrange for a different method of taking care of the waters of a stream, and the city, if it so desires, may make a new regulation on the subject, compliance with which shall render maintenance of the building lawful so far as conformity with the ordinance is concerned.

Evans, J., dissenting.

*Appeal from Woodbury District Court.*—HON. FRANK R. GAYNOR, Judge.

MONDAY, FEBRUARY 13, 1911.

ACTION to abate a nuisance alleged to have been created within the limits of the plaintiff city by the erection by defendant of a culvert or conduit through which the water of a small stream is required to pass, with the result, due to the insufficient size of said culvert or conduit, that at times of high water the streets have been and will in the future be flooded, to the injury of abutting property owners and to the injury of the city itself as the owner of buildings adjacent to said stream. It was also alleged that the defendant had, in constructing said culvert or conduit, violated the terms of the city ordinance under which its erection was authorized. On a hearing on the merits the court denied relief to plaintiff, and it appeals. *Reversed* and *remanded*.

*F. E. Gill, Sam Page,* and *F. W. Sargent,* for appellant.

*Ferris & Iddings, Shull, Farnsworth & Sammis,* and *Lewis S. Haslam,* for appellee.

McClain, J.—A stream called Perry creek, rising about fifteen miles north of Sioux City, flows through the city in a tortuous course substantially from north to south, and empties into the Missouri river within the city limits. Fourth street runs east and west, and where it crosses this street there is a bridge connecting it with West Third street. Just south of this bridge defendant's grantor in 1905 erected a warehouse, which defendant is still maintaining, extending across the stream, leaving for the passage under the building of the waters of the stream a conduit, composed of concrete walls and an overhead floor of concrete supported on I-beams of steel, five feet in depth. This conduit connects at its northern end with the city bridge, and was constructed under the authority conferred by a city ordinance by which the city purported to vacate and convey to defendant's grantor a strip of ground fourteen feet wide off the east side of Elm street, which is the street running approximately north and south to the west of and abutting the premises now occupied by defendant. The defendant was already the owner of the lots through which Perry creek ran south of Fourth street; and, making use of the additional ground taken from the east side of Elm street adjoining said lots, defendant's grantor proceeded to erect a building covering its lots and this additional ground, providing for the passage of the stream through and under said building as above described. The ordinance above referred to contained the provision that defendant's grantor, as owner of the property abutting upon the stream, was "authorized and empowered, in order to protect the said city, . . . to erect substantial stone or concrete walls on each side of Perry creek, extending from the south end of the main concrete abutments of said bridge, . . . along the banks of said creek southwesterly, . . . such walls to be at such distance apart as to leave a channel for Perry creek substantially the same width as now exists between

the concrete abutments of said bridge. And the said Haley & Lang Company (defendant's grantor) and their successors shall have the right to build across Perry creek at said place, supported by said walls, a building or build-ings so constructed as to be strong and substantial, and not to interfere with the flow of the waters in said creek, and said walls shall be constructed under plans and specifications of the city engineer of Sioux City and sub-ject to his inspection of the building thereof."

Although there was an unusual flood in Perry creek in the summer of 1908, after the building contemplated in the ordinance had been erected, no inadequacy in the conduit provided for the passage of the water in the stream under the building was disclosed. But in the sum-mer of 1909 there was an unusual freshet, causing a still greater volume of water to pass through the conduit, and, as alleged by the city, the conduit proved inadequate, and the water backed up in the stream above the city bridge, so that it overflowed the high banks of the creek within the two blocks north of Fourth street and West Third street, respectively, and extended eastward and westward, to the damage, not only of property owners, but also to the damage of the streets of the city. The city asks that the defendant be required to either remove its building and conduit entirely from the bed of the creek or to enlarge the conduit to such an extent as to correspond to the natural channel of the creek; and in an amendment, setting out the ordinance above referred to, it alleges that defendant's grantor in the construction of the building and conduit did not comply with the terms of the ordinance, in that it constructed the walls of the conduit in such a manner as to make the channel sub-stantially narrower than the width between the concrete abutments, and constructed the roof of the conduit in such a manner that the beams supporting it extend substantially lower than the top of the channel under the city bridge,

so the area remaining through which the water of the stream may pass is twenty-five percent less than that afforded for the passage of such water by the city bridge.

I. The defendant questions the right of the city to complain in this action of the conduit through defendant's building as a nuisance; contending, first, that as a matter of fact the conduit in itself is sufficient for all such floods as are reasonably to be anticipated, and that the damage caused by the backing up of the water in the summer of 1909 was due to obstructions below the conduit, which were not within defendant's control, and to debris lodging above the city bridge. As to this question of fact, we find under the record that the debris lodging above the city bridge was not the cause of the overflow, as it appears that the waters of the stream extended beyond its high banks before such debris had accumulated at the city bridge, and there was sufficient outlet for the water below the conduit to have carried it off, had the conduit itself been sufficient to allow the water to pass through. It does appear that after the flood the conduit was found to be partly choked up by trees, timbers, and other debris, which had been caught above by the I-beams and thus prevented from passing through. This was not the fault of the city, but the fault rather of the construction of the conduit, which was not only inadequate in size, but by reason of the projection of the I-beams afforded an obstacle likely to cause the passage to be clogged up. Whether or not there would have been such clogging at this time, had this conduit been fully as large as the opening under the city bridge, we can not say; but we are satisfied that the inadequacy in size and the method of construction did tend to bring about the result which followed.

II. Defendant's contention that the city is not the proper party plaintiff to complain of the improper obstruction of the stream by defendant's building is without

merit.    The city has the right, not merely as a private property owner, but in behalf of the public, to cause the abatement of the obstruction in a stream, the consequence of which is to damage or reasonably threaten injury to neighboring property.    *Waterloo v. Waterloo, C. F. & N. R. Co.*, 149 Iowa, 129; 4 Pomeroy, Equity (3d Ed.), section 1349.

2. MUNICIPAL
 CORPORATIONS:
 nuisance:
 abatement:
 parties.

III.    There might be some question whether, as an original proposition, we ought to hold the conduit under defendant's building to be so far insufficient for the passage of the waters of the stream that it should in this action be declared a nuisance and abated.    We feel justified in suggesting, however, that while the flood of 1909 was unusual, and the volume of water in the street at this point perhaps greater than on any previous occasion as to which the witnesses testify, yet there was no unprecedented fall of water, such as that resulting from a cloudburst or like cause beyond the course of nature, and that the recent construction of storm sewers entering into the stream, probably brought down the water in greater quantity at that particular time than on previous occasions of high water.    And it must be borne in mind that the city had the right to make use of this stream for the purpose of discharging into it such sewers, and for the purpose of relieving its streets quickly from such floods as might occur from even unusual, though perhaps not unprecedented, rainfall.    Any obstruction to such use of the stream, resulting in general injury to property in the neighborhood and to the streets of the city, would unquestionably amount to a nuisance.

3. SAME: use
 of stream
 by city:
 obstruction.

But if the city, anticipating danger from the obstruction of this stream, had by general ordinance declared that no buildings or other structures over the stream should be erected without leaving a specified area unob-

structed for the flow of the water in its natural channel, there could be no question, as we think, as to the validity of the ordinance, provided, of course, that it was reasonable, that is, within the scope of the general police powers of the city. And if such regulation had been adopted, the burden would certainly have been on one who had violated the provisions of the ordinance to show that the regulation was unreasonable; that is to say, he must show that his structure did not in any way imperil the safety of the public as to free passage of the water of the stream at any stage, resulting from causes which could in their nature and extent have been anticipated.

*4. Same: ordinances: reasonableness: burden of proof.*

The city has in general the power "to prevent injury or annoyance from anything dangerous, offensive, or unhealthy, and to cause any nuisance to be abated." Code, section 696. It is true that we have held in *Ottumwa v. Chinn,* 75 Iowa, 405, the city can not maintain a general equitable action to enjoin and abate a nuisance on the ground of injury to its citizens. But that case recognizes the right of the city to enforce the regulations of its ordinances, and after an ordinance has been properly adopted, prohibiting the obstruction of a stream within the city limits for the purpose of preventing injury to its inhabitants, we see no reason why the city may not proceed in equity to enforce such regulation, by having the obstruction to the stream which violates the provisions of its ordinances abated as a nuisance. If the city, in the interests of its inhabitants, has not the right to institute such an action in equity, then in this case it may maintain the action as a private property owner, for certain buildings belonging to the city, located just north of the Fourth Street Bridge, are imperiled by any unusual flooding of the stream.

*5. Same: enforcement of ordinances.*

IV. No doubt it would be beyond the power of the city to provide by a general ordinance that a specific prop-

erty holder such as the defendant should not erect and
maintain a conduit of less than a specified
capacity; for ordinances, like laws, should
be general in their nature and applicable
to all persons in similar situations.    But in
this case the city had a special ground for legislation, in
that it had occasion within the scope of its powers to
authorize defendant's grantor to use a portion of Elm
street in the construction and support of its proposed
building.    Having this special occasion to legislate on the
subject, it might properly impose as a condition a re-
quirement that the conduit be of a specific size.    The ordi-
nance being, therefore, a proper one, and within the scope
of the exercise of power on the part of the city, we see
no reason why an obstruction in the stream such as is
prohibited by the ordinance may not be treated as a nui-
sance and abated at the suit of the city, and we think
that the burden is not upon the city to show that the ob-
struction which violates a condition of the ordinance in-
tended for the protection of the general public is in its
nature a nuisance, but rather upon the property owner
who has violated the provisions of the ordinance intended
for the protection of the public to show that the provision
of the ordinance is unreasonable and imposes a restriction
upon defendant which in no event and under no circum-
stances is necessary for the public protection.

But, without regard to the question whether the
structure is a nuisance or not, the city, as the owner of
a portion of Elm street, the public character of which
has been terminated by proper vacation, con-
tracted, as it had the right to contract, with
defendant's grantor that title to such por-
tion should pass only on a specified condition, which con-
dition was imposed for the protection of the public, and
we see no reason why the city, as a party to such con-
tract, may not in equity require compliance by the de-

6. SAME: pri-
vate use of
street: re-
strictive con-
ditions: bur-
den of proof.

7. SAME:
equitable en-
forcement
of conditions.

fendant with the conditions attached to his property when he acquired it. Such a negative specified enforcement of the terms of a contract is a proper exercise of equitable jurisdiction, where there is no adequate remedy at law. Pomeroy, Equity (3d Ed.), section 1341. Property owners of the city, even though injury to their property were threatened by a violation of the contract, might not, perhaps, be entitled to have it specifically performed. If the city, in the exercise of one of its powers, sees fit to impose a condition for the benefit of the public, we see no reason why it should not have the power to enforce the condition imposed.

V. Some question of estoppel on the part of the city is raised by the defendant in the pleadings and arguments; but we find nothing in the record to sustain

8. Same: estoppel.

9. SAME:
obstruction of
watercourse:
relief.

### FRIDAY, MAY 12, 1911.

