15948

KIRK v. CLARK

(42 S. E. (2d) 587)

*Messrs. C. B. Horger,* and *Felder & Rosen,* all of Orangeburg, for Appellant, cite:

*Messrs. Fred R. Fanning, Jr.,* and *T. B. Bryant, Jr.,* of Orangeburg, for Respondent, cite:

May 15, 1947.

FISHBURNE, AJ.: The plaintiff recovered damages for personal injuries alleged to have been sustained in a restaurant owned and operated by the defendant, Winfield Clark, at Santee, South Carolina. To the complaint, the defendant entered a general denial, and the affirmative defense that he was neither the owner nor the operator of the restaurant referred to therein. Upon his appeal to this court, he relies solely upon this defense, hence all issues relating to negligence and wilfulness go out of the case.

On November 11, 1945, the plaintiff, an elderly woman, whose home was in Scranton, Pennsylvania, was traveling in an automobile along United States Highway No. 15, en route to Florida, with her brother-in-law and sister, Mr. and Mrs. E. A. Ernshaw. They stopped for lunch at a restaurant and tourist court at Santee, in Orangeburg County, after which the plaintiff entered the ladies' rest room. Upon entering the rest room she tripped in a drain hole in the center of the cement floor which was uncovered, and fell, fracturing her spine.

The validity of the defense depends upon whether appellant was the owner and manager of the business carried on in this roadside restaurant and tourist court.

The appeal is from the refusal of the trial court to direct a verdict in favor of the defendant, made at the close of the

evidence, and the denial of defendant's motion for judgment *non obstante veredicto,* or in the alternative, a new trial.

The appellant endeavored to prove that although he had formerly owned and conducted the restaurant, he had sold the business and stock of goods to J. L. Dannelly, who was at the time of the accident sole owner and operator. In support of this contention, he introduced in evidence a conditional sales contract, interpreted by the trial judge to be a chattel mortgage, dated September 1, 1945, which purported to convey to Dannelly all title and interest in the business known as "Mims Filling Station" or "Marion Cafe."

It was admitted that legal title to the premises was vested in Clark Realty Company, a corporation, in which appellant owned all of the stock but two shares, and that he ran the restaurant up until September 1, 1945, the date of the conditional sales contract. About eight days before the execution of this instrument, on August 23, 1945, the appellant filed an application with the South Carolina Tax Commission for the renewal of his permit to sell wine and beer at this cafe. On August 27th this application was refused. Some time after September 1, 1945, J. L. Dannelly, as owner, applied for and received from the Tax Commission a permit to sell wine and beer at the same location.

Throughout the trial, the respondent assailed the validity of the contract or mortgage alleged to have been entered into between the appellant and Dannelly. It was brought out on cross examination of the latter that no cash payment was made at the time of the execution of this instrument, but that appellant was to receive five per cent. of the gross sales each month as payment on the purchase price of the stock of goods and fifty dollars per month as rent for the buildings, and that appellant would have the right to occupy one of the cabins, and would receive his board free. This contract was not filed for record in the office of the clerk of court until eighteen days after the complaint in this action was served.

Dannelly testified that he sold the business to a son of the appellant on September 1, 1946, but he said he could not remember what he had been paid for his interest, nor any of the details connected therewith, although this transaction occurred within a month of the trial of this case.

The respondent contended that the contract was not entered into in good faith; that it was resorted to as a subterfuge for the purpose of securing a beer license for the business; and that Mr. Dannelly was not the true owner at any time, but was operating it for the appellant merely as his agent and employee.

Respondent's witness, Ernshaw, testified that immediately after the accident in the restaurant, he inquired of Mr. Dannelly as to the ownership of the business and was informed by him that it belonged to Winfield Clark. Two or three witnesses who resided in the community in which the restaurant was located, testified that the appellant lived on the premises; that they had heard of no change of ownership, and that they saw appellant serving and waiting on customers after the alleged sale of the business to Dannelly. It should be mentioned here that Dannelly worked in the restaurant for six months immediately prior to the time he claims to have purchased it, as an employee of appellant, so that there was no break in the continuity of his service and presence.

We think the evidence in this case as to the ownership of the restaurant made an issue for the jury. As was stated in *Greenville & C. R. Co. v. Partlow*, 14 Rich. 237: "It may be that no one of the facts would, of itself, warrant the inference, and yet, when taken together they would produce belief, which is the object of all evidence."

The general rule is that it is the duty of the trial judge to direct a verdict, when the testimony and all inferences which the jury could legitimately draw therefrom would be insufficient to support a verdict for the

other party. The trial judge in the case at bar concluded, correctly we think, that there was more than a scintilla of evidence from which the jury could reasonably infer that appellant was the owner and operator of this restaurant.

There remains to be considered an issue arising out of the continuance of this case in the circuit court at a former term, conditioned upon the payment of certain costs.

The case was on the docket for trial at the June (1946) term of court, and it was agreed between counsel that it would be tried on Tuesday of the second week, which was June 11th. Following the agreement, counsel for the appellant, on June 6th, informed one of plaintiff's counsel that Mr. Clark had suffered a severe heart attack, and asked for a continuance. Whereupon, respondent's counsel reminded appellant's counsel of the firm agreement made to try the case regardless of whether Mr. Clark should be able to be present or not. The agreement for trial was then renewed, but on June 7th appellant's counsel notified opposing counsel that on account of Mr. Clark's condition, he could not be present at the trial, and they would not therefore consent for the case to be heard. On June 8th a certificate of Mr. Felder, of counsel for appellant, and a doctor's certificate were filed, wherein the status of Mr. Clark's health was given, and a motion for continuance was made. On this showing, Judge Mann, the trial judge at that term of the court, continued the case.

On June 10, 1946, the respondent filed her affidavit, setting forth that on the strength of the agreement that the case would be tried, she had left her home in Scranton, Pennsylvania, on Thursday morning, June 6, 1946, by automobile for Orangeburg to attend the trial, and was accompanied by the Ernshaws, both of whom were material witnesses; and that they were in Orangeburg, ready for trial of the case on June 11th. It was further averred that the actual expense of making the trip to Orangeburg and returning to Scranton,

including travel, meals and lodging for herself and the Ern-shaws, would amount to $219.61.

Upon this affidavit, Judge Mann, by an order dated June 10th, directed that the case be continued, conditioned upon the payment by the defendant to the plaintiff of the sum of $219.61. Due notice of intention to appeal from this order was served on plaintiff's attorneys on June 20, 1946. The case was tried at a subsequent term of the court, convening in October, 1946. So far as the record shows, payment of this expense was not made prior to the trial of the case. Apparently nothing was said about it, and the decision on the validity of the order evidently awaited this present appeal.

Appellant now contends that his Honor, Judge Mann, erred in continuing the case upon terms—that is, conditioned upon payment by the defendant to the plaintiff of the items of costs and expense hereinabove referred to; and in any event, that the amount involved was excessive and contrary to law. It is argued that inasmuch as these witnesses resided outside of the state of South Carolina, the respondent is not entitled to recover mileage; and in no event is she entitled to recover the expense of meals and lodging.

It is provided in Section 763 of the 1942 Code: "When an application shall be made to a court or referee to postpone a trial, the payment to the adverse party of a sum not exceeding ten dollars, besides the fees of witnesses, may be imposed, as the condition of granting the postponement."

In our opinion, under Section 763, the court in granting a continuance is limited to the imposition of not more than ten dollars, in addition to $1.00 for every day's attendance for each witness, and five cents per mile for coming to court and returning by the shortest practical route (Sec. 4963). The Section (763) does not include or authorize the expenses of traveling, such as lodging and meals.

This court has uniformly held that no costs can be taxed except such as the law in terms allows. *Setzer v. Odom,* 174 S. C. 56, 176 S. E. 869; *South Carolina Public Service Authority v. Spearwant Liquidating Co.,* 201 S. C. 207, 22 S. E. (2d) 252. The Washington statute providing for the payment of a penalty and costs as a condition for continuance, is identical with ours, and similarly construed. *Tacoma Nat. Bank v. Peet,* 9 Wash. 222, 37 P. 426.

The process of a court is without validity beyond the limits of a state. The fact, however, that a witness comes from outside of the state does not prevent the taxation of mileage for his travel within the state; which mileage is to be taxed from the state line to the place of trial and return to the state line on the most direct route. 20 C. J. S., Costs, § 245, p. 480; *Cox, Maitland & Co. v. Charleston F. & M. Ins. Co.,* 3 Rich. 331, 45 Am. Dec. 771; *Speigner v. Cooner,* 9 Rich. 120; Annotation, 7 Ann. Cas. 163, 164.

But respondent contends that where a party accepts the conditions on which a continuance is granted, which he may do by accepting the continuance or by failing to waive it promptly, he cannot afterward complain that the court exceeded its authority.

The record shows that appellant excepted to the ruling, and where the statute defines the terms on which a continuance may be granted, acquiescence in the order postponing the trial does not, in our opinion, estop the moving party from challenging the legality of the terms imposed. Our statute (Sec. 763), in designating the terms on which continuances may be ordered, by fair implication excludes authority to impose others; and if others are named (as was done in this case) as conditions upon which the order is entered, these are in excess of authority, and may be challenged as any other like rulings. To the same effect is *Keller v. Harrison,* 151 Iowa, 320, 128 N. W. 851, 131

N. W. 53, Ann. Cas. 1913-A, 300. And see Annotation Ann. Cas. 1913-A, 306.

We think the order providing the conditions named for the continuance of this case at the June Term, 1946, constituted error. As we construe Code Section 763 and 4963, as applied to the order, these witnesses were entitled only to mileage at the rate of five cents per mile from the state line to the city of Orangeburg and from Orangeburg back to the state line. Expenses for lodging and meals must be excluded.

The judgment recovered by the plaintiff in the lower court is affirmed. The case is remanded, however, so that the costs may be taxed in accordance with the views herein expressed.

Judgment affirmed.

BAKER, CJ., and STUKES, TAYLOR, and OXNER, JJ., concur.